# EXHIBIT E

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Robert P. Lesko
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
**Attorneys for Plaintiff, American General Life Insurance Company**

```
FILED

MAY 2 1 2010

SUPERIOR COURT OCEAN COUNTY
```

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: OCEAN COUNTY DOCKET NO: L 1954-10 |
|       Plaintiff, | |
| vs. | |
| CHAIM FINK, the C. FINK FAMILY TRUST, ZALMEN LANDAU, as Trustee of the C. FINK FAMILY TRUST, ISRAEL BILLER, and JOHN DOES 1-10. | **COMPLAINT** |
|       Defendants. | |

Plaintiff, American General Life Insurance Company ("American General"), having its

principal place of business at 2929 Allen Parkway, Houston, Texas, 77019, by and through its

undersigned counsel, and by way of Complaint against defendants, Chaim Fink ("Fink"), the C.

Fink Family Trust ("the Trust"), Zalmen Landau, as Trustee of the C. Fink Family Trust ("the

Trustee" and/or "Landau"), Israel Biller, individually, ("Biller"), and John Does 1- 10

(hereinafter collectively referred to as "Defendants"), states as follows:

### Introduction

1.    American General seeks a declaration from this Court that Flexible Premium

Adjustable Life PolicyU10061721L ("the Policy") issued by American General to the Trust in

the amount of $8,000,000 and insuring the life of Fink is void *ab initio* based upon material

misrepresentations in the application for the Policy and because the Trust lacked an insurable

interest in the life of Fink at the time of application for and issuance of the Policy. In addition

and/or in the alternative, American General seeks an award of compensatory and exemplary

damages arising out of said transactions and American General's subsequent administration and investigation of the Policy and the transaction.

2.      In the application for the Policy and during the underwriting process, Defendants made fraudulent misrepresentations to American General and/or encouraged, facilitated, aided, and abetted said fraudulent misrepresentations to American General concerning Fink's personal net worth and income. Specifically, Defendants misrepresented that Fink had an annual income of $1,800,000 and a net worth of $22,150,000. However, American General's investigation reveals that Fink's annual income and net worth was materially less than what Defendants represented in connection with the application for the Policy.

3.      Defendants also fraudulently misrepresented in the application the reason for which the Policy was sought. Specifically, Defendants represented that the reason for the Policy was "Estate Planning," meaning preservation of the insured's purportedly sizeable estate from anticipated estate taxes. However, neither Fink nor the Trust nor any Defendant at any time relevant to this matter had any expectation or belief that the Policy was to be purchased for purposes of "Estate Planning" or would otherwise inure to the benefit of Fink's estate or her natural heirs or any other person or entity possessing an insurable interest in his life. Rather, Defendants at all relevant times knew and understood that the sole purpose of the Policy was to create an illegal wagering contract upon Fink's life by ceding all controlling and beneficial interest in the Policy to persons and/or entities who are strangers to Fink with no insurable interest in his life. Defendants at all times intended to transfer the beneficial and/or ownership interest in the Policy to such persons and/or entities. The Trust and its ostensible ownership of the Policy was and is a mere sham as part of common scheme employed by defendants, generally known as Stranger-Originated Life Insurance ("STOLI"), and perpetrated in an attempt to

2

circumvent applicable laws and public policy pertaining to insurable interest. As such, the Trust lacked any insurable interest in the life of Fink, and the Policy is, therefore, void *ab initio*.

4.      Each of the defendants knew that all of the relevant representations were false or recklessly disregarded the veracity of the representations, and further knew that the transaction was consummated through fraud and deception, but each defendant nonetheless encouraged, facilitated, aided and abetted, transmitted and/or directly made representations to American General with the intention of defrauding American General into issuing the Policy.

5.      Accordingly, American General demands, together or in the alternative, rescission *ab initio* of the Policy and restitution of American General to its original position prior to the fraud, equitable remedies to include the imposition of constructive trusts with tracing as necessary, restrictions on future conduct, compensatory and exemplary damages, costs of investigation and suit, monetary interest, and attorneys fees.

<u>Jurisdiction, Parties, and Venue</u>.

6.      Venue lies within Ocean County because one or more of the defendants resides in Ocean County a substantial part of the events and omissions giving rise to the claims occurred in Ocean County.

7.      American General is a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas, 77019.

8.      Upon information and belief, Fink is a citizen of the State of New York, and maintains his permanent residence at 626 Wythe Place #4-5, Brooklyn, NY 11211.

9.      Upon information and belief, the Trust is an unincorporated jural entity formed under the laws of the State of New Jersey and subject to the ownership and control of its Trustee,

989234.1

Landau. Upon information and belief, the Trust has an address of 1 Cathedral Drive, Lakewood, NJ.

10.     Upon information and belief, Landau is a citizen of the State of New York and maintains his permanent residence at 1178 59th Street, Apt 1-T, Brooklyn, NY 11219-4999.

11.     Upon information and belief, Biller is a citizen of the State of New Jersey and maintains his permanent residence at 215 E 5th Street, Lakewood, New Jersey.

12.     Upon information and belief and subject to the completion of American General's investigation, John Does 1 through 10 are presently unknown individuals and/or entities who have facilitated, encouraged, directly participated in, and/or aided and abetted the fraud as against American General and in the effort to gain from defendants' attempts to circumvent applicable insurable interest laws and public policy.

### Stranger-Originated Life Insurance

13.     Defendants engaged in a scheme referred to as Stranger-Owned or Stranger-Originated Life Insurance ("SOLI "or "STOLI"), or Investor-Owned or Investor-Originated Life Insurance ("IOLI") that typically involves the acquisition of outright or beneficial ownership interest in life insurance policies with large face amounts by investors who are strangers to the person insured and who have no insurable interest in the life of the person insured. Such arrangements constitute illegal wagering contracts contrary to statutory law and public policy.

14.     The investor strangers directly or indirectly assume the obligation of paying premiums due on the policy in exchange for their interest in it, including the right to all or a substantial portion of the death benefits to be paid when the insured dies. Of course, the sooner the insured dies, the fewer premiums the investor strangers are required to pay and the higher the return on their investment. In an attempt to ensure the highest possible rate of return through

prompt pay-out of the death benefits, the investor strangers typically recruit elderly individuals to participate in the application process and serve as the proposed insured.

15.     Similarly, the higher the death benefit on the policy, the greater the ultimate return on the investor strangers' investment.   Thus, as in this case, the net worth and other material information concerning the proposed insured is often inflated or otherwise misrepresented in order to qualify for the most valuable policies with the highest available death benefits at the lowest available premiums.   In some cases, even the health and medical background of the proposed insured is misrepresented.

16.     These arrangements violate state statutory and common law insurable interest laws and are contrary to public policy because the strangers or investors acquire significant speculative economic and pecuniary interests which are best served by the prompt and premature death of the person insured rather than his or her continued life.

17.     The investor strangers have devised various schemes to conceal their lack of insurable interest and circumvent insurable interest laws and public policy.   One such scheme -- like the one perpetrated by the defendants in this case -- involves the formation of an irrevocable life insurance trust ostensibly established by the insured.   Perpetrators of the fraud identify a willing proposed insured, match the proposed insured with investor strangers to fund the premiums required to acquire the policy, arrange for preparation of a trust document, and arrange for any other services necessary to conceal the fraud and secure issuance of the policy.   The beneficiary of the sham trust may or may not be an individual or group of individuals with an insurable interest in the insured.   However, in all cases, the trust is formed as a sham with the specific present intent and structured to facilitate transfer of the outright or beneficial ownership interest in the life insurance policy after it has been issued.

5

18.     The proposed insured is typically offered something of value, such as immediate cash payments, in exchange for his or her participation in the application process. The proposed insured is often provided false or misleading assurances by the perpetrators of the fraud that the transaction is legal and appropriate.   In any event, as in this case, the proposed insured is nevertheless culpable and either intentionally, willfully and wantonly, recklessly or negligently complicit in the fraud because he or she elects to turn a "blind eye" and accept such bald assurances without having made any reasonable independent inquiry as to the propriety or legality of the transaction or the veracity of the representations submitted to the insurance company in his or her name in support of the application for insurance.

### Application and Misrepresentations

19.     On April 4, 2008, Fink, Landau, and Biller executed Part A Application ("the Application"), a copy of which is attached hereto as **Exhibit A.**

20.     The Application was purportedly executed in Lakewood, NJ.

21.     In response to Question 1 on the Application, Fink, Landau, and Biller represented that Fink had an annual household income of $1,800,000 and a net worth of $22,150,000.

22..     In response to Question 3 on the Application, Fink, Landau, and Biller identified the owner of the proposed policy as the Trust.

23.     In response to Question 9 on the Application, Fink, Landau, and Biller identified the beneficiary of the proposed policy as the Trust.

24.     In response to Question 4 on the Application, Fink, Landau, and Biller represented that the reason for the Policy was "estate planning."

6

989234.1

25.     By executing the Application, Fink, Landau, and Biller acknowledged and agreed that American General would rely upon the information provided in all parts of the Application when determining whether to issue the Policy.

26.     Furthermore, Fink, Landau, and Biller promised that the information in the Application was true and complete as follows:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statement contained in this application and any attachments or they have been read to me.  They are true and complete to the best of my knowledge and belief.  I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued.  I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.

27.     Biller completed and executed an Agent's Report on April 7, 2008.

28.     In the Agent's Report, Biller represented to American General that he was not "aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability."

29.     On May 7, 2008, Fink and Landau completed and executed a Financial Questionnaire in further support of their application for the Policy, a copy of which is attached hereto as **Exhibit B**.  The Financial Questionnaire was purportedly executed in Lakewood, NJ.

30.     Question 1 on the Financial Questionnaire requested a statement of Fink's personal pre-tax income from all sources for the current fiscal year and for the previous fiscal year.

7

31.   In response to Question 1 on the Financial Questionnaire, Fink and Landau represented Fink's personal pre-tax income as $1,800,000 for the current fiscal year (2008) and $1,722,000 for the previous fiscal year (2007).

32.   Question 2 on the Financial Questionnaire asks, "what is your approximate net worth, i.e., assets minus liabilities? (if necessary, give details in 'Remarks' below)."

33.   In response to Question 2 on the Financial Questionnaire, Fink and Landau represented Fink's approximate net worth as $22,150,000 for the current fiscal year (2008) and $20,025,000 for the previous fiscal year (2007).   In the "Remarks" section, Fink and Landau commented "the assets are without the current annual income."

34.   Question 4 on the Financial Questionnaire asks, "How was the need for this new amount of coverage determined?"

35.   In response to Question 4 on the Financial Questionnaire, Fink and Landau responded, "Net worth assets calculated with expected inheritance taxes."

36.   On May 14, 2008, a representative from Exam One interviewed Fink, or an individual claiming to be Fink.

37.   Fink told the representative that his net worth is in excess of $22,000,000 and that the source of his income is real estate.  Fink also told that representative that his total unearned income is $1,775,000.  Thereafter, Exam One transmitted this information to American General in the form of an inspection report.

38.   In reliance upon all the foregoing representations, American General executed, issued, and caused to be delivered to the Trust the Policy in the amount of $8,000,000, with an issue date of May 22, 2008, insuring the life of Fink, and naming the Trust as beneficiary.

8

39.     On June 3, 2008, Landau, Biller, and Fink executed a Policy Acceptance and Amendment of Application form, purportedly in Lakewood, New Jersey. The Policy Acceptance and Amendment of Application form contained amendments to certain answers regarding Fink's health history as reported on the Part B Life Insurance Application.

40.     American General incurred costs in connection with the issuance and administration of the Policy.

## Defendants Misrepresented Fink's Income and Net Worth

41.     American General has conducted a review and investigation of the application for the Policy and the representations made in connection with the application.

42.     In the course of its investigation, American General discovered for the first time that Fink, Biller, the Trust, and Landau materially misrepresented Fink's net worth and personal income in connection with the application for the Policy.

43.     American General's investigation revealed that Fink has no interest in any real estate holdings, contrary to the representation that the source of his alleged $1,800,000 annual income is real estate.   In fact, American General's investigation revealed that the residence in which Fink currently resides, 626 Wythe Place #4-5, Brooklyn, NY 11211, is classified as public housing.

44.     On May 17, 2010, counsel for American General sent a letter request to Fink at his residence via overnight mail, requesting that Fink call counsel immediately upon receipt. Neither Fink nor any person on behalf of Fink called or otherwise contacted counsel for American General in response to the May 17th letter.

9

989234.1

## Defendants Misrepresented the Reason for Insurance

45.    Upon information and belief, neither Fink, Biller, Landau, or the Trust had at any time relevant to the application for issuance of the Policy, any intention of maintaining a controlling or beneficial ownership interest in the Policy or the benefits that might become payable thereunder. Rather, at all times relevant, Fink, Biller, Landau, and the Trust intended to sell, surrender, or otherwise fully encumber all controlling or beneficial ownership interest in the Policy and its prospective benefits in exchange for immediate pecuniary gain through financial transactions with John Does 1 - 10.

46.    Based upon information and belief, and subject to the completion of American General's investigation, contrary to Fink's, Biller's, Landau's, and the Trust's representations to American General, neither Fink, Biller, Landau, or the Trust intended to pay any premiums for the Policy from Fink's personal assets or assets transferred by Fink to the Trust.

47.    Fink, Biller, Landau, and the Trust did not reveal their present intentions to sell, transfer and/or otherwise encumber the ownership interests for the benefit of John Does 1-10 at the time they completed the application or accepted delivery of the Policy and paid the first premium. Rather, Fink, Biller, Landau, and the Trust intentionally concealed their intentions in order to deceive American General into approving, issuing, and delivering the Policy as applied for.

48.    Because Fink, Biller, Landau, and the Trust had previously formed the intention to sell, surrender, or otherwise fully encumber the Policy, Landau and/or the Trust lacked an insurable interest in Fink's life as of the date the Policy was issued.

989234.1

## The Misrepresentations Were Material

49.    If American General knew the true facts regarding Fink's actual income and net worth and/or the true reason for applying for the Policy, American General would not have agreed to approve, issue, or deliver the Policy.

50.    American General reasonably relied upon the misrepresentations and omissions contained in the application for the Policy, and otherwise made by Fink, Biller, Landau, and the Trust in support of the application for the Policy.

51.    American General incurred costs in connection with the investigation regarding the misrepresentations and omissions of Fink, Biller, Landau, and/or the Trust.

## Count I
### (Material Misrepresentation)

52.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

53.    The response to Question 1 on the Application was false and failed to disclose Fink's true income and net worth.

54.    The response to Question 4 on the Application was false and failed to disclose the true reason for the Policy.

55.    The statement of acknowledgement and agreement by virtue of Fink's, Landau's and Biller's signatures on the Application for the Policy was false.

56.    The statements of Biller contained in the Agent's Report were false.

57.    The statements contained in the inspection report regarding Fink's income, net worth, annual income, and source of annual income, all of which were provided by Fink, were false.

11

58.    The statement contained in the Financial Questionnaire regarding Fink's income, net worth, and reason for insurance were false.

59.    Fink's true financial status, including his income and net worth, which was not disclosed in the Application or otherwise, was material to the risk undertaken by American General in issuing the Policy.

60.    Fink's true intention and reason for seeking issuance of the Policy, which was not disclosed in the Part A Application or otherwise, was material to the risk undertaken by American General in issuing the Policy.

61.    American General relied upon all of the statements submitted in support of the application for the Policy.

62.    American General's reliance upon the material misrepresentations and omissions in the application and/or in connection with the application was reasonable.

63.    If Fink, Biller, Landau, and/or the Trust had fully and completely disclosed Fink's income and net worth and/or true reasons for seeking issuance of the Policy, or if the same facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have executed, issued, or delivered the Policy or accepted premiums for the Policy.

64.    Because of the foregoing material misrepresentations and failure to disclose, the Policy is void ab initio and of no force of effect since its inception, and American General never has been and never will become liable to anyone thereunder.

65.    American General has incurred substantial expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payment of commissions and fees in connection with issuance of the Policy, administration and servicing of

12

the Policy, investigation of the misrepresentations, fraud, and concealment outlined above, and commencement of the present litigation to enforce its rights.

66.    In light of the foregoing damages, expenses, and costs incurred by American General, American General should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs.  Without such retention and/or offset, the equitable remedies sought herein, including restitution, would be rendered futile or impossible.

67.    Notwithstanding the foregoing, American General stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy to the current owner of the Policy or as directed by this Court in accordance with American General's demand for rescission of the Policy and restitution of the parties to their pre-contract positions insofar as it is possible and equitable.

68.    Accordingly, American General hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks this Court's direction as to actual payment of the same.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the

13

original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

### Count II
### (Fraud)

69.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

70.     The misrepresentations and failure to disclose Fink's true net worth in the application for the Policy were made and done knowingly by Fink, Biller, Landau, and the Trust

14

with intent to deceive American General into issuing and delivering the Policy.

71.    The misrepresentations and failure to disclose the true reasons for the Policy set forth in the Application were knowingly made, done, encouraged, aided and/or abetted by Fink, Biller, Landau, and the Trust with intent to deceive American General into issuing and delivering the Policy.

72.    Biller's misrepresentations contained in the Agent's Report were made and done knowingly by Biller with the intent to deceive American General into issuing and delivering the Policy.

73.    The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the Policy.

74.    If Fink, Biller, Landau, and/or the Trust had fully and completely disclosed Fink's true net worth, annual income, and/or true reason for the Policy prior to or at the time of the issuance or delivery of the Policy, American General would never have executed, issued, or delivered the Policy, nor would American General have accepted premiums for the Policy.

75.    Because of the intentional and fraudulent misrepresentations and concealment, the Policy is void *ab initio* and of no force and effect since its inception and American General never has nor will American General become liable to anyone thereunder.

76.    American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against

15

989234.1

costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.        In the alternative, a declaration pursuant to <u>N.J. Stat</u>. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.        An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.        Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.        Such other and further relief as may be available to American General which the Court deems to be equitable and just.

989234.1

### Count III
### (Lack of Insurable Interest)

77.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

78.    The sole purpose for creation of the Trust was to further the efforts of Fink, Biller, Landau, the Trust and John Does 1-10 to circumvent applicable insurable interest rules and public policy.

79.    The application for and purported ownership of the Policy by the Trust was merely a sham transaction intended to circumvent and violate applicable insurable interest rules and public policy.

80.    Therefore, at all times relevant to the application for the Policy at issue, the Trust lacked any insurable interest in the life of Fink.

81.    Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has and never will become liable to anyone thereunder.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for

17

cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## Count IV
### (Declaratory Relief)

82.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

83.     An actual and justiciable controversy has arisen and now exists between American General and defendants concerning their respective rights and duties under the Policy.

989234.1

84.     American General contends that because of the material and fraudulent misrepresentations and concealments regarding Fink's true net worth, income, and reason for the Policy, the Policy is void *ab inito* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

85.     American General further contends that because the Trust lacked any insurable interest in the life of Fink at the time the Policy was applied for and issued, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

86.     A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.      A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid

989234.1

under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## Count V
## (Civil Conspiracy)

87.      American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

88.      Each of the defendants engaged in, facilitated, encouraged, aided and abetted and/or otherwise acted in furtherance of an overall scheme and conspiracy as detailed herein, all or portions of which scheme and conspiracy were known to each of each of them.

89.      Some or all of the defendants together conspired and agreed to devise and execute a scheme or plan to solicit elderly persons, including Fink, and to promote and facilitate the procurement of life insurance policies from insurers, including American General, for which said

applicants could not qualify based upon their true net worth, income, reasons for purchasing the insurance, and because of state insurable interest laws, which defendants endeavored to improperly circumvent or avoid.

90.    Each defendant, individually and collectively, engaged in deceptive and fraudulent acts as more fully set forth elsewhere in this document in furtherance of the conspiracy, including but not limited to; meeting together for purposes of planning and executing the conspiracy; making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; causing, promoting, encouraging, facilitating, or aiding and abetting third parties in making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; providing or obtaining financing for the deceptive and fraudulent transaction; creating or causing to be created, authorizing, executing and otherwise promoting a sham insurance trust and or other artifices to temporarily hold ownership interest in the ill-gotten insurance policy.

91.    American General has incurred substantial harm as a result of defendants' conspiracy, including but not limited to, monetary damage and exposure to potential current or future legal liability resulting from issuance of the illegal policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position,

21

and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.*  that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## Count VI
### (Breach of Contract Against Biller)

92.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

93.    Biller was appointed and authorized to solicit and submit to American General applications for life insurance by virtue and subject to the terms and provisions of a valid and enforceable contract.

94.    Pursuant to the terms and provisions of said contract, Biller owed to American General a duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

95.    Biller breached his contract with American General.

96.    As a direct and proximate cause of Biller's breach of his contract with American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

## Count VII
### (Fiduciary Duty as to Biller)

97.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

98.    Pursuant to the terms and provisions of the contract entered into between and among American General, Independent Marketing Group ("IMG") and Biller, Biller owed to

23

American General a fiduciary duty to submit to American General only those applications for life insurance that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures.

99.     By virtue of the relationship between and among American General and IMG and Biller, and Biller's superior position and ability to evaluate and assess the eligibility, acceptability,   insurability, and suitability of proposed insureds and appropriateness of transactions to be presented to American General for underwriting, Biller owed to American General a fiduciary duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

100.   Biller breached his fiduciary duty to American General.

101.   As a direct and proximate cause of Biller's breach of his fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

### Count VIII
#### (Negligence -- as to Biller)

102.   American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

103.   Biller owed to American General a duty of care in executing his obligations as a duly appointed independent insurance broker, including but not limited to the duty to solicit and

24

submit for underwriting only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures, and otherwise consistent with law and public policy.

104.    Biller breached his duty of care to American General.

105.    Biller maliciously, willfully, wantonly, and recklessly disregarded his obligations to American General and the welfare of American General in breaching his duty of care to American General.

106.    As a direct and proximate cause of Biller's breach of his fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
        Robert P. Lesko

Dated: May 21, 2010

25

## CERTIFICATION PURSUANT TO RULE 4:5-1

The Undersigned hereby certifies that:

1.   To the best of his knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any other Court, nor is it the subject of a pending arbitration proceeding, nor is any such proceeding contemplated at this time by the plaintiff.

2.   To the best of her knowledge, information and belief, there are no parties that must be joined in this action.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
           Robert P. Lesko

DATED:  May 21, 2010


## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that pursuant to Rule 4:25-4, Robert P. Lesko of the law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP is hereby designated as trial counsel in the above captioned litigation.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
           Robert P. Lesko

DATED:  May 21, 2010

26

989234.1

## CERTIFICATION OF MAILING

I, Marisol Nieves, certify as follows:

I am employed by the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for Plaintiff, American General Life Insurance Company in the within matter.

I certify that the original and one copy of the within Complaint was sent for filing by Hand Delivery to the Clerk of Ocean County Superior Court, in Toms River, New Jersey, pursuant to the direct filing system on this same date.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Marisol Nieves

Dated: May 21, 2010

27

989234.1

# **AIG** AMERICAN GENERAL

**Life Insurance Application
Part A**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY
☐ AIG Life Insurance Company, Wilmington, DE
*Member companies of American International Group, Inc.*

The insurance company checked above ("Company") is responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

| Personal Information |
| --- |

**1. Primary Proposed Insured**

Name  CHAIM FINK                                           Social Security #  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

Sex ☑M ☐F  Birthplace* *(state, country)*  OYAPD          Date of Birth  9/1/30     Current Age  77

Tobacco Use  Have you ever used any form of tobacco or nicotine products? ☐yes ☑no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License ☐yes ☑no  Number  NONE                   License State _____

U.S. Citizen ☑yes ☐no  If no, Date of Entry _____        Visa Type _____  Exp. Date _____

Address  626 Wythe Pk. #4-c   City, State  Brooklyn   NY   ZIP  11211

Home Phone  (718) 389-3781  Work Phone (   )             Email _____

Employer  RETIRED            Occupation _____            Length of Employment _____

Employer Address _____       City, State _____    ZIP _____

Duties _____

Personal Earned Income $  0        Household Income $ 1,800,000   Net Worth $ 33,750,800

If Primary Proposed Insured is a child or is age 18 or over and not self-supporting, what amount of insurance is in force on any of the following: Spouse $_____   Father $_____   Mother $_____   Siblings $_____

**2. Other Proposed Insured**

Name _____                                               Social Security # _____

Sex ☐M ☐F  Birthplace* *(state, country)* _____         Date of Birth _____    Current Age _____

Relationship to Primary Proposed Insured _____

Tobacco Use  Have you ever used any form of tobacco or nicotine products? ☐yes ☐no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License ☐yes ☐no  Number _____                  License State _____

U.S. Citizen ☐yes ☐no  If no, Date of Entry _____        Visa Type _____  Exp. Date _____

Address _____       City, State _____    ZIP _____

Home Phone (   )    Work Phone (   )             Email _____      Length of Employment _____

Employer _____            Occupation _____

Employer Address _____       City, State _____    ZIP _____

Duties _____

Personal Earned Income $ _____        Household Income $ _____   Net Worth $ _____

| Ownership |
| --- |

**3. A.** Complete if the Primary Proposed Insured is not the Owner *(If contingent Owner is required, use Remarks section.)*

Name THE C FINK FAMILY TRUST  Social Security or Tax ID # 26-6319153   # of Birth 2-13-2008

Address 1 CATHEDRAL DRIVE   City, State LAKEWOOD  NJ   ZIP 08701

Home Phone _____             Relationship to Primary Proposed Insured _____

Email _____

**B.** Complete if Owner is a trust *(If trustee is premium payor, also complete section 14 D.)*

Exact Name of Trust  THE C. FINK FAMILY TRUST    Trust Tax ID # 26-6319153  Pending

Address 1 CATHEDRAL DRIVE   City, State LAKEWOOD  NJ   ZIP 08701

Email _____

Current Trustee(s)  ZACMEN CANDAU                          Date of Trust 2/13/08

*for identification purposes only

AGLE100606-2006                              Page 1 of 8

## Product Information

**4. Product Name** *(Complete appropriate supplemental application if applicable.)* Elite UL
Amount Applied For: Base Coverage $ 2,000,000     Supplemental Coverage *(if applicable)* $ _____
Death Benefit Compliance Test Used *(if applicable)*: ☐ Guideline Premium ☐ Cash Value Accumulation
Automatic Premium Loan *(if applicable)*: ☐ Yes ☐ No   Premium Class Quoted _____
Reason for Insurance _Estate Planning_

**5. Dividend Options** *(For participating policy only.)*
☐ Cash ☐ Premium Reduction ☐ Paid-up Additions ☐ Deposit Earning Interest ☐ Other *(Explain)* _____

**6. Premium Allocation** *(For indexed UL only if applicable.)*
Indicate how each premium received is to be allocated. Total allocations must equal 100%. Use whole percentage only.
Indexed Interest Account _____% Excess Interest Account _____% Total 100%

**7. Death Benefit Options** *(For UL & VUL only.)* ☐ Option 1 – Level ☐ Option 2 – Increasing ☐ Option 3 – Level Plus Return of Premium

**8. Riders/Benefits**
☐ Child Rider Amount $ _____ (Complete Child Rider Attachment) or ☐ No current children
☐ Waiver of Premium ☐ Waiver of Monthly Deduction ☐ Waiver of Monthly Guarantee Premium
☐ Maturity Extension Rider – Accumulation Value ☐ Maturity Extension Rider – Death Benefit ☐ Terminal Illness Rider
☐ Accidental Death Benefit Amount $ _____ ☐ Other Insured/Spouse Rider Amount $ _____
☐ Disability Income Rider *(Complete the following if DI Rider is requested)*
    Number of Units *(1 unit = $100)*: _____ Occupational Class *(Please check)*: ☐ 1 ☐ 2
☐ Adjustable Return of Premium Rider – *(Provide % of Premium)* _____
☐ Scheduled Increase Rider
☐ Other Riders/Benefits #1 _____ Amount/Unit(s) _____
☐ Other Riders/Benefits #2 _____ Amount/Unit(s) _____

## Beneficiary

| | | | | | |
|---|---|---|---|---|---|
| **9. Primary** | Name | THE FINK FAMILY TRUST | Relationship _____ | Share _____ % |
| | Name _____ | | Relationship _____ | Share _____ % |
| | Name _____ | | Relationship _____ | Share _____ % |
| | Name _____ | | Relationship _____ | Share _____ % |
| **10. Contingent** | Name _____ | | Relationship _____ | Share _____ % |
| | Name _____ | | Relationship _____ | Share _____ % |
| | Name _____ | | Relationship _____ | Share _____ % |

**11. Trust Information** (if Beneficiary) Exact Name of Trust THE C. FINK FAMILY TRUST
Trust Tax ID # 26-6319153   Current Trustee(s) CARMEN CANDAC   Date of Trust 2/13/08

**12. Rider Beneficiaries** *(Complete if other than Primary Proposed Insured.)*
Other Insured/Spouse Rider _____ Relationship _____
Child Rider _____ Relationship _____

## Business Coverage

**13. Business Insurance Details** *(Complete only if applying for business coverage.)*
Does any Proposed Insured have an ownership interest in the business? ☐ yes ☐ no
If yes, what is the percentage of ownership for the: Primary Proposed Insured _____% Other Proposed Insured _____%
Net Profit of Business $ _____ Fair Market Value of Business $ _____
If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
Describe any special circumstances. _____

AGLC100685-2006                                                      Page 2 of 6

| Premium |
|---|

14. Premium Payment   ☐ Modal $ _____   ☐ Single $ _____   ☐ Additional Initial $ _____
   A. Frequency of modal premiums: ☑ Annual ☐ Semi-annual ☐ Quarterly ☐ Monthly *(Bank Draft only)*
   B. Method: ☐ Direct Billing ☐ Bank Draft *(Complete Bank Draft Authorization.)* ☐ List Bill Number _____
      ☐ Credit Card - Initial Premium Only *(Complete Credit Card Authorization.)*
      ☐ Other *(Please explain.)* _____
   C. Amount submitted with application $ _____
   D. Premium Payor *(Complete if other than Owner.)*
      Name _____ Social Security or Tax ID # _____
      Relationship to Primary Proposed Insured _____
      Address _____ City, State _____ ZIP _____

| Limited Temporary Life Insurance Eligibility |
|---|

15. Health and Age Questions *(Regarding the Primary Proposed Insured and the Other Proposed Insured under a joint life or survivorship policy. If the correct answer to either question below is "yes" or any question is answered falsely or left blank, coverage is not available under the Limited Temporary Life Insurance Agreement ("LTLIA") and it is void, and any payment submitted will be refunded. Read the LTLIA for additional terms and conditions of coverage.)*
   A. Has any Proposed Insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed? ☐ yes ☐ no
   B. Is any Proposed Insured age 71 or above? ☐ yes ☐ no

| Existing Coverage |
|---|

16. Existing Coverage
   A. Life and Annuity Coverage
      Does any Proposed Insured have any existing or pending annuities or life insurance policies? ☐ yes ☑ no
      *(If yes, complete the following regarding such annuities or life insurance policies.)*
      Type: i = individual, b= business, g=group, p=pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| | | | | | | ☐ yes ☐ no | ☐ yes |
| | | | | | | ☐ yes ☐ no | ☐ yes |
| | | | | | | ☐ yes ☐ no | ☐ yes |
| | | | | | | ☐ yes ☐ no | ☐ yes |

      *Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.
   B. Disability Coverage *(Complete only if Disability Income Rider coverage requested.)*
      Does any Proposed Insured have any existing or pending Disability Insurance policies? ☐ yes ☑ no
      *(If yes, complete the following regarding existing and pending disability insurance)*

| Insurance Company | Benefit Amount | Benefit Period | Elimination Period | Year Issued |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

CF00030

| Nonmedical Questions |
|---|

**17. Background Information** *(Complete questions A through F. If yes answer applies to any Proposed Insured, provide details specified after each question.)*

**A.** Does any Proposed Insured intend to travel or reside outside of the United States or Canada within the next two years?   ☐ yes ☒ no

*(If yes, list country, date, length of stay and purpose.)* _____

**B.** In the past five years, has any Proposed Insured participated in, or does he or she intend to participate in: any flights as a trainee, pilot or crew member; scuba diving; skydiving or parachuting; ultralight aviation; auto racing; cave exploration; hang gliding; boat racing; mountaineering; extreme sports or other hazardous activities?   ☐ yes ☒ no

*(If yes, circle or list the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

**C.** Has any Proposed Insured:

1) During the past 90 days submitted an application for life insurance to any company or begun the process of filling out an application?   ☒ yes ☐ no

*(If yes, list company name, amount applied for, purpose of insurance and if application will be placed.)* WAS SHOPPED informaly By SEVRAL companys

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?   ☐ yes ☒ no

*(If yes, list date and reason.)* _____

**D.** Has any Proposed Insured ever filed for bankruptcy?   ☐ yes ☒ no

*(If yes, list chapter filed, date, reason and discharge date.)* _____

**E.** In the past five years, has any Proposed Insured been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?   ☐ yes ☒ no

*(If yes, list date, state, license no. and specific violation.)* _____

**F.** Has any Proposed Insured ever been convicted of or pled guilty or no contest to a criminal offense or currently have any felony or misdemeanor charge pending?   ☐ yes ☒ no

*(If yes, list date, state and charge.)* _____

| Remarks |
|---|

**18. Details and Explanations** _____

CF00031

American General Life Insurance Company, Houston, TX        AIG Life Insurance Company, Wilmington, DE
The United States Life Insurance Company in the City of New York, New York, NY

The above listed life insurance company ("Company") as selected on page one of this application is responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

## Agreement, Authorization to Obtain and Disclose Information and Signatures

I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplements and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.

Except as may be provided in any Limited Temporary Life Insurance Agreement, I understand and agree that even if I paid a premium no insurance will be in effect under this application, or under any new policy or any rider(s) issued by the Company, unless or until all three of the following conditions are met: (1) the policy has been delivered and accepted; and (2) the full first modal premium for the issued policy has been paid; and (3) there has been no change in the health of any Proposed Insured(s) that would change the answers to any questions in the application before items (1) and (2) in this paragraph have occurred. I understand and agree that if all three conditions above are not met: (1) no insurance will begin in effect; and (2) the Company's liability will be limited to a refund of any premiums paid, regardless of whether loss occurs before premiums are refunded.

Limited Temporary Life Insurance Agreement ("LTLA") -- If I have received and accepted the LTLA, I understand and agree that such insurance is available only on the life of the Primary Proposed Insured under the life policy (and the Other Proposed Insured under a joint and survivorship life policy, if applicable) and only if the following four conditions are met: (1) the full first modal premium is submitted with this application and paid; and (2) only "no" answers have been truthfully given to the Health and Age Questions in section 15; and (3) Part A and Part B of the application must be completed, signed and dated; and (4) all medical exam requirements must be satisfied. I understand and agree that such insurance is not available with any riders or any accident and/or health insurance.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the Company's rights or requirements.

I have received a copy or have been read the Notices to the Proposed Insured(s).

I give my consent to all of the entities listed below to give to the Company, its legal representatives, American General Life Companies LLC ("AGLC") (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations; treatments; surgeries; hospital confinements for physical and/or mental conditions; use of drugs or alcohol; drug prescriptions; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; pharmacy benefit manager or prescription database; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931. This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report. ☐ Check if you wish to be interviewed.

IRS Certification: Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured(s)/Owner Signature

Signed at (city, state) _LAKEWOOD_ _NJ_                              On (date) _APRIL 7, 2008_

Primary Proposed Insured X _Chris Chink_
_____
(if under age 15, signature of parent or guardian)

Other Proposed Insured X _____
(if under age 15, signature of parent or guardian)

Owner (if other than Primary Proposed Insured) X _____

Agent(s) Signature(s)
I certify that the information supplied by the Primary Proposed Insured(s)/Owner has been truthfully and accurately recorded on the Part A application.

Writing Agent Name (please print) _ABG PLANNING_                   Writing Agent # _____

Writing Agent Signature X _____        Countersigned _____
                                                   (licensed resident agent if state required)

AGLC100550-2005                           Page 5 of 8

CF00032

**AIG.** AMERICAN GENERAL

**Financial Questionnaire**

☐ American General Life Insurance Company, Houston TX
☐ The United States Life Insurance Company in the City of New York, New York, NY
☐ AIG Life Insurance Company, Wilmington, DE
*Member companies of American International Group, Inc.*

In this questionnaire, the "Company" refers to the insurance company whose name is checked above.
The insurance company shown above is solely responsible for the obligation and payment of benefits under any policy that it may issue.
No other company is responsible for such obligations or payments.

**Proposed Insured**

*Please complete questions 1 through 4 for personal insurance or questions 1 through 11 if the insurance is for business purposes, then date and sign the questionnaire.*

Proposed Insured   CHAIM EWK          Date of birth 9/1/30   Social Security # 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

1. Your income (before income Tax).   Current fiscal year   Previous fiscal year
   (Date 1/1/07 thru 1/1/08)

| | Current fiscal year | Previous fiscal year |
|---|---|---|
| Salary or wages | | |
| Bonuses and/or commissions | | |
| Net business or professional income (i.e., Gross income less business expenses, but not before personal income) | | |
| Other earned income (give details in "Remarks" below) | | |
| Unearned income (interest and dividends, net real estate income, etc.) give details in "Remarks" below | 1,800,000.00 | 1,777,000.00 |
| TOTAL | 1,800,000.00 | 1,777,000.00 |

2. What is your approximate net worth, i.e., assets minus liabilities? (If necessary, give details in "Remarks" below)
   Current fiscal year   Previous fiscal year
   (Date 1/1/08 thru 1/1/09)

| | Current fiscal year | Previous fiscal year |
|---|---|---|
| Personal Assets | 24,225,000.00 | 22,150,000 |
| Business Assets | | |
| Liabilities | 2,225,000.00 | 2,225,000 |
| Net worth | 22,150,000.00 | 20,025,000 |

3. Estimated tax liabilities at death (include potential estate taxes, inheritance taxes and capital gains taxes, both federal and state)

   10,000,000

4. How was the need for this new amount of coverage determined?
   NET WORTH OR ASSETS calculated with EXPECTED Inheritance taxes.

   Remarks (questions 1-4)
   2) THE ASSETS ARE without the current ANNUAL income.

AGLC2018-1971w/2005                Page 1 of 2

CF00084

5. Purpose of business insurance
☐ Key Executive     ☐ Deferred Compensation     ☐ Buy-Sell Agreement/Stock Repurchase     ☐ Other

Other purpose — explain: _____

6. Is there a written buy/sell agreement in effect? (if yes, attach copy) ☐ Yes   ☐ No

   Is there a buy/sell agreement contemplated?                           ☐ Yes   ☐ No

7. Creditor: Name of lender _____

   Is insurance requested by lender?                                     ☐ Yes   ☐ No

   Coverage amount required by creditor: _____

   Purpose of loan _____
   _____

   (Use "Remarks" below for further details.)

8. Are other corporate officers or partners being insured?              ☐ Yes   ☐ No

   If yes, give details, if no, explain: _____
   _____

9. What percentage of the business do you own? _____ %

10. Estimated fair market value of business: _____

    (In "Remarks" state how this value was determined)

11. Financial details of business:          Current fiscal year                Previous fiscal year
                                   (Date  /  /  thru  /  / )

    A. Total assets _____

    B. Total liabilities _____

    C. Gross sales or revenue _____

    D. Net income (before taxes) _____

    Please submit a copy of the most recent balance sheet and income statement (year or quarter).

    Remarks (questions 5 – 11) _____
    _____
    _____
    _____

Agreement: All of the above answers are full, complete and true to the best of my knowledge and belief, and are a continuation of, and form a part of, the application for insurance.

X Owner _____   Date 5/7/08

Signed at (City, State) _CARLWOOD___ NJ_

X Witness _____   Date 5/7/08

X Proposed Insured _____   Date 5/7/08

    (If under age 15, signature of parent or guardian)

AGLC0046-E5 Rev03es                            Page 2 of 2

CF00085