UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE C FINK FAMILY TRUST BY ITS
TRUSTEE ZALMEN LANDAU,

    Plaintiff,

  v.

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

    Defendant.

Case No.: 10-cv-9230 (JSR)

## MEMORANDUM OF LAW IN SUPPORT OF AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS

EDWARDS ANGELL PALMER & DODGE LLP
Andrew P. Fishkin
Steven M. Lucks
750 Lexington Avenue
New York, NY 10022
Tel.: 212.308.4411
Fax: 212.3308.4844
*Attorneys for Defendant*
*American General Life Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

I. INTRODUCTION ...................................................................................... 1

II. RELEVANT FACTS AND PROCEDURAL HISTORY ......................................... 1

    A.    The Parties' Dispute At Issue Here And In The First- Filed New Jersey
           Action.............................................................................................. 1

    B.    The First-Filed New Jersey Action. .................................................... 3

    C.    The Later-Filed New York Action........................................................ 5

III. ARGUMENT ......................................................................................... 6

    A.    The Court Should Exercise Its Discretion To Decline  Jurisdiction Under
           The Declaratory Judgment Act .......................................................... 6

        1.    The Declaratory Judgment Act vests the Court with broad
             discretion to decline jurisdiction over this later-filed New York
             action in favor of the New Jersey Action................................... 6

        2.    The Court should decline to entertain this Declaratory Judgment
             Action in favor of the prior-filed New Jersey Action ................. 9

            (i)    The parties' controversy can be better resolved in the New
                  Jersey Action.................................................................... 9

            (ii)    If allowed to proceed, this declaratory judgment action
                  would result in duplicative, piecemeal litigation ......................... 11

            (iii)    The declaratory judgment sought by the Trust would
                  improperly encroach upon the domain of the New Jersey
                  state courts ...................................................................... 12

    B.    The Court Should Dismiss Or Stay This Action  Because The New Jersey
           Action Was First-Filed...................................................................... 13

        1.    The First-Filed Rule Creates a Strong Presumption in Favor of the
             First-Filed New Jersey Action ................................................ 13

        2.    The First-Filed New Jersey Action is Substantially Similar To This
             Case.................................................................................. 15

3.    Plaintiff Cannot Overcome the Strong First-Filed Presumption
Where Neither Special Circumstances Nor the Balance of
Convenience Points to the Later-Filed New York Action ........................ 16

IV.  CONCLUSION ............................................................................................................ 18

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*AbovePeer, Inc. v. Recording Indus. Ass'n of Am., Inc.* 166 F. Supp. 2d. 655 (N.D.N.Y. 2001) ...................................................................................................................16

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,* 475 F. Supp. 2d 213 (E.D.N.Y. 2007) ....................................................................................................................12

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491(1942) ........................................7, 8, 9

*Caisse National de Credit Agricole v. Bank of Tokyo-Mitsubishi Trust Co.*, No. 97 Civ. 588 (PKL), 1997 WL 345216 (S.D.N.Y. June 20, 1997) ...........................................11

*Conn. Gen. Life Ins. Co. v. Zurich Reinsurance, Inc.,* No. 601334/00, 2002 WL 1880261 (N.Y. Sup. Ct. Mar. 7, 2002) ..........................................................................13

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ....................................9

*Fireman's Fund Ins. Co. v. Chris-Craft Indus.*, 932 F. Supp. 618 (S.D.N.Y. 1996)......................8

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) ................................13

*Gyadu v. Hartford Ins. Co.,* 133 F.3d 907 (2d Cir. 1998) ...........................................15

*In re Salomon Smith Barney Mu. Fund Fees Litig.,* No. 04 CIV. 4066, 2006 WL 2085979 (S.D.N.Y. July 26, 2006) ..................................................................................14

*J. Lyons & Co., Ltd. V. Republic of Tea, Inc.*, 892 F. Supp. 486 (S.D.N.Y. 1995) ......................14

*Machat v. Sklar*, No. 96 Civ. 3796 SS, 1997 WL 599384 (S.D.N.Y. Sept. 29, 1997) .............8, 11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, No. 00 Civ. 5007 (NRB), 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001)....................................................12

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997)....................................8, 9

*North American Airlines, Inc. v. Int'l Bhd. of Teamsters*, No. 04 Civ 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) .......................................................................10

*Pharmaceutical Res., Inc. v. Alpharma USPD, Inc.,* No. 02 Civ 1015, 2002 WL 987299 (S.D.N.Y. May 13, 2002)...........................................................................15

*Quality King Distributors, Inc. v. KMS Research, Inc.* 946 F. Supp. 233 (E.D.N.Y. 1996) ................................................................13, 16

*Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462 (S.D.N.Y. 2001)............................13

*Reliance Ins. Co. of Illinois v. Multi-Fin. Sec. Corp.*, No. 94 Civ 6971 (SS), 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996) ...................................................................................12

*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001)...........................14, 16, 17

*Spotless Enter., Inc. v. Accessory Corp.* 415 F. Supp. 2d 203 (E.D.N.Y. 2006)...............14, 15, 17

*Travelers Indemn. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800 (WHP), 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ..........................................................................10, 12

*Van Wagner Enters., LLC v. Brown*, 367 F.Supp. 2d 530 (S.D.N.Y. 2005) ................................11

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ........................................................................7, 8, 9

*Woolard v. Shaffer Stores Co.*, 272 N.Y. 304 (1936) .....................................................................13

*Yancoskie v. Del. Port Auth.*, 78 N.J. 321 (1978) ...........................................................................13

## Statutes

28 U.S.C. §2201(a) ............................................................................................................................6

NY CPLR 3211(a)(4)........................................................................................................................13

NY CPLR 3211(a)(5)........................................................................................................................13

## Rules

Fed. R. Civ. P. 12(b)(6).....................................................................................................................18

N.J. Court Rules 4:4-4(b)(1)(C)........................................................................................................4, 5

## I. INTRODUCTION

Following the doctrine of declaratory judgment abstention, and the first-filed rule, the Court should dismiss or stay this action in favor of American General Life Insurance Company's virtually identical, earlier filed action in New Jersey. Plaintiff's forum shopping and procedural maneuvering should not be rewarded; the parties' dispute should be heard where it was initially brought.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   The Parties' Dispute At Issue Here And In The First-Filed New Jersey Action.

In April 2008, Chaim Fink ("Fink"), Zalmen Landau ("Landau") and Israel Biller ("Biller") completed and executed an application for an $8M life insurance policy with American General (the "Policy") on the life of Fink to be owned by The C. Fink Family Trust (the "Trust"). (Declaration of Andrew P. Fishkin sworn to February 10, 2011, Exh. A.) The application was executed in Lakewood, New Jersey where both the Trust and Biller, the agent on the Policy, resided. (Fishkin Decl., Exh. A.) Fink and Landau represented in the application that Fink had an annual household income of $1.8M and a net worth exceeding $22M, and that the Policy was for estate planning purposes and would be owned by the Trust. (Fishkin Decl., Exh. A, nos. 1, 3, 4 and 9.) Fink and Landau represented the information they provided in the Policy application was "true and correct," "agree[d]" that it "shall be the basis for any policy . . . issued," and understood "that any misrepresentation contained in [the] application and relied on by [American General] . . . may be used to . . . void the policy." (Fishkin Decl., Exh. A.) Biller certified in the application that the information Fink and Landau provided was "truthfully and accurately recorded on the . . . application." (Fishkin Decl., Exh. A.) Biller also completed an agent's report wherein he represented that he was unaware "of any information that would

adversely affect any proposed insured's eligibility, acceptability, or insurability." (Fishkin Decl., Exh. B.)

In further support of the Policy application, on May 7, 2008, Fink and Landau completed and executed an American General Financial Questionnaire, also in Lakewood, New Jersey. (Fishkin Decl., Exh. C.) There, Fink and Landau represented that Fink's personal pre-tax income in the current year (2008) was $1.8M and exceeded $1.7M in 2007, that his approximate net worth exceeded $20M in both 2007 and 2008, and that they determined the Policy was needed on account of "expected inheritance taxes." (Fishkin Decl., Exh. C.)

On May 14, 2008, a representative from Exam One, a third-party vendor that American General uses to interview applicants as part of its underwriting process, interviewed Fink. Fink advised the representative that his net worth exceeded $22M and that his income was derived from real estate holdings. Exam One provided this information to American General in an inspection report. (Fishkin Decl., Exh D at 6.)

In reliance upon the foregoing representations by Fink, Landau and Biller, on May 22, 2008, American General issued the Policy to the Trust, insuring the life of Fink, and naming the Trust as the beneficiary.

Following issuance of the Policy, American General reviewed and investigated the Policy application and the representations by Fink, Landau and Biller contained therein. In the course of its investigation American General discovered that Fink, Landau, and Biller, had made and/or encouraged, facilitated, aided and abetted fraudulent misrepresentations to American General concerning Fink's income and net worth, as well as the reason for which the Policy was sought. American General's investigation revealed that Fink had no real estate holdings and that whereas he represented having millions of dollars of income and net worth, Fink was residing in public

2

housing in Brooklyn, New York. American General's investigation revealed that the Policy was not for "estate planning" purposes as represented, and that it would not inure to the benefit of Fink's estate or any person having an insurable interest in his life. Rather, Fink, Landau and Biller intended to use the Policy as an illegal wagering contract upon Fink's life by ceding all controlling and beneficial interest in the Policy to persons and/or entities who were strangers to Fink with no insurable interest in his life. American General learned that the Trust and its ostensible ownership of the Policy was a sham as part of a common scheme employed by defendants, generally known as Stranger-Originated Life Insurance, perpetrated in an attempt to circumvent applicable laws and public policy pertaining to insurable interests. As such, the Trust lacked any insurable interest in Fink's life and the Policy is void *ab initio*. (Fishkin Decl., Exh. E.)

B.     The First-Filed New Jersey Action.

On May 21, 2010, American General filed suit against Fink, the Trust, Landau, Biller and John Doe defendants in the Superior Court of New Jersey, Ocean County (Docket No. L-1954-10) (the "New Jersey Action"), seeking to formally declare the Policy void *ab initio* based on the material misrepresentations contained in the application and because the Trust lacked an insurance interest in Fink's life.[1] (Fishkin Decl., Exh. E.) American General alleges that Fink, the Trust, Landau, Biller and the John Doe defendants (hereinafter, collectively referred to as "Defendants") "made fraudulent misrepresentations" to American General "in the application for the policy and during the underwriting process . . . and/or encouraged, facilitated, aided and abetted said fraudulent misrepresentations to American General concerning Fink's personal net

---

[1] American General also seeks reimbursement to offset its costs associated with the underwriting, issuance, and administration of and investigation into the Policy, and additional money damages against Biller. (Fishkin Decl., Exh. E WHEREFORE clauses.)

worth and income and . . . the reason for which the policy was sought." (Fishkin Decl., Exh. E

¶¶ 2-3.)  American General alleges that had it known the "true facts regarding Fink's actual

income and net worth and/or the true reason for applying for the policy, American General

would not have agreed to approve, issue or deliver the policy." (Fishkin Decl., Exh. E ¶ 49.)

American General has engaged in substantial efforts to prosecute its claims in the New

Jersey action.  On July 6, 2010, American General personally served Biller with the Summons

and Complaint at his home in Lakewood, New Jersey.  (Fishkin Decl., Exh. F.)  After multiple

earlier attempts to serve him were unsuccessful or failed to elicit a response, American General

served Fink with another copy of the Summons and Complaint, at his home, in October 2010.

(Fishkin Decl., Exh. G.)  When Fink and Biller failed to serve responsive pleadings to the

Complaint, American General moved to hold them in default, which motion was granted by the

New Jersey Court on December 20, 2010.  (Fishkin Decl., Exh. H.) Effectuating service on

Landau was more challenging.  The sum and substance of the difficulties American General

encountered in that process were detailed in American General's motion to restore its complaint

against the Trust, which the New Jersey Court granted on January 7, 2011.  (Fishkin Decl., Exhs.

I & J.)  Briefly stated, before bringing the New Jersey Action, an investigation undertaken by

American General's counsel in that matter had revealed that Landau did not reside at the Trust

address on record with American General.  (Fishkin Decl., Exh. I.)  After unsuccessfully

attempting to personally serve him at other addresses they discovered, in August 2010, American

General attempted to serve Landau at his residence in accordance with N.J. Court Rules 4:4-

4(b)(1)(C).  (Fishkin Decl., Exh. K.)

During the course of its efforts to serve him, Landau submitted additional premium

payments to American General on the Policy.  On August 17, 2010, American General's counsel

in the New Jersey Action wrote to Landau that since the Policy was rescinded for the reasons stated in the New Jersey Action, American General issued a premium refund check that would be returned to him as soon as he acknowledged receipt of American General's letter and confirmed his residential address. (Fishkin Decl., Exh. L.)  American General's counsel also asked Landau to "please refrain from submitting any further premium payments on the Policy," and that if he refused, "American General may, at its sole option . . . retain the premium payment without prejudice to and without waiver of or estoppel against any of its rights, and/or defenses asserted or to be asserted in connection with the" New Jersey Action "as an offset of costs, fees, and/or damages pending the ultimate outcome of the litigation." (Fishkin Decl., Exh. L.)

American General's counsel received a response to its August 17 letter from counsel for one "Solomon Landau," advising that (Zalmen) Landau did not reside at the address at which American General attempted to serve him and to which counsel had directed its letter.  (Fishkin Decl., Exh. M.)  On October 25, 2010, American General served Landau at a new address that they found for him, pursuant to N.J. Court Rules 4:4-4(b)(1)(C).  (Fishkin Decl., Exh. N.)  In the meantime, Landau submitted another premium payment on the Policy, and American General responded with another premium refund check that its counsel in the New Jersey Action continues to hold pending confirmation of Landau's whereabouts. (Fishkin Decl., Exh. I ¶ 15.)

C.    The Later-Filed New York Action.

Despite the New Jersey Action brought months earlier, on November 4, 2010, the Trust, by Landau, filed a Summons and Complaint For Declaratory Judgment commencing the instant action against American General, in the Supreme Court of the State of New York, County of New York (Index No. 114460/10) (the "New York Action").  The New York Action seeks judgment "declaring the Policy is in full force and effect," and that American General is

"estopped from cancelling" it by virtue of the Trust's "premium payments" and American

General's purported failure to send notices of cancellation of the Policy. (Fishkin Decl., Exh O

(WHEREFORE clause and ¶¶ 10 -13)).[2]

On December 9, 2010, American General removed the New York Action to this Court,

and thereafter obtained an extension of its time to answer or move against the Complaint For

Declaratory Judgment to January 20, 2011. (Fishkin Decl., Exhs. P & Q.) On that date, the

Court directed American General to file its motion to dismiss the Complaint For Declaratory

Judgment by February 10, 2011.

III. ARGUMENT

A.    The Court Should Exercise Its Discretion To Decline
      Jurisdiction Under The Declaratory Judgment Act.

      1.    The Declaratory Judgment Act vests the Court with broad discretion to decline
            jurisdiction over this later-filed New York action in favor of the New Jersey
            Action.

The Court should exercise its discretion to abstain from exercising its jurisdiction here.

The Declaratory Judgment Act expressly confers discretion on federal courts to determine

whether to exercise jurisdiction under the Act by providing that federal courts "*may declare the

rights and other legal relations of any interested party seeking such declaration.*" 28 U.S.C.

§2201(a) (emphasis added). Where, as here, there is a concurrent affirmative state court

proceeding involving all of the parties needed for full resolution of the underlying dispute,

precedent strongly favors abstention from a federal court's exercise of discretionary jurisdiction

---

[2] Following its receipt of the later-filed New York Action, American General arranged to serve
Landau at the residence address listed for him in the Summons in that action. American
General's first attempt at personally serving Landau at that address was unsuccessful. However,
on December 20, 2010, American General's private investigator served Landau at that residence
address (and one other) in accordance with the New Jersey Court Rules. (Fishkin Decl, Exh. I
¶10.) (including a detailed account of Landau's effort to evade service).

under the Act, and dismissal of the declaratory judgment action (or at least a stay of proceedings

pending resolution of the state court proceedings).  *See, e.g., Wilton v. Seven Falls Co.,* 515 U.S.

277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491(1942).

United States Supreme Court jurisprudence emphasizes the broad discretion afforded

district courts under the Declaratory Judgment Act to decline to consider a complaint seeking

declaratory relief.  In *Wilton,* for example, the Court considered an appeal by declaratory

judgment plaintiffs whose federal court action was stayed pending a later-filed state court suit

involving the same parties.  *See* 901 F.Supp. 243 (S.D. Tex. 1993), *aff'd,* 41 F.3d 934 (5th Cir.

1994), *aff'd*, 515 U.S. 277 (1995) (unanimous decision).  Observing that "virtually identical"

circumstances had been addressed more than fifty years earlier in *Brillhart,* the Court noted

"[t]he question for a district court presented with a suit under the Declaratory Judgment Act ... is

'whether the questions in controversy between the parties to the federal suit ... can better be

settled in the proceeding pending in the state court.'"  *Wilton*, 515 U.S. at 282 (quoting *Brillhart*,

316 U.S. at 495).  Like the *Brillhart* Court before it, the *Wilton* Court warned that "at least where

another suit involving the same parties and presenting opportunity for ventilation of the same

state law issues is pending in state court, a district court might be indulging in 'gratuitous

interference,' if it permitted the federal declaratory action to proceed."  *Id.* at 283 (quoting

*Brillhart*, 316 U.S. at 495 ("[O]rdinarily, it would be uneconomical as well as vexatious for a

federal court to proceed in a declaratory judgment suit where another suit is pending in a state

court presenting the same issues, not governed by federal law, between the same parties.

Gratuitous interference with the orderly and comprehensive disposition of a state court litigation

should be avoided.")

In affirming the abstention, the Court emphasized the uniquely discretionary nature of the jurisdiction conferred on federal courts by the Declaratory Judgment Act.

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.
>
> "[T]here is ... nothing automatic or obligatory about the assumption of 'jurisdiction'" by a federal court to hear a declaratory judgment action ... In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 286-88 (internal citations omitted).

Following the Supreme Court's guidance in *Brillhart* and *Wilton,* courts in this Circuit routinely dismiss or stay declaratory judgment actions such as this one in favor of affirmative actions filed elsewhere. *See, e.g. Nat'l Union Fire Ins. Co. v. Karp.*, 108 F.3d 17, 22-23 (2d Cir. 1997) (affirming district court's exercise of discretion to decline declaratory judgment jurisdiction in favor of pending state court proceeding where plaintiffs' "declaratory judgment claim could better be settled in the state proceeding"); *Machat v. Sklar*, No. 96 Civ. 3796 (SS), 1997 WL 599384, at *10 (S.D.N.Y. Sept. 29, 1997); *Fireman's Fund Ins. Co. v. Chris-Craft Indus.*, 932 F. Supp. 618, 621 (S.D.N.Y. 1996). Indeed, there is a presumption in favor of abstention from a declaratory judgment when a concurrent affirmative state court action is pending. *See Brillhart*, 316 U.S. at 495; *Machat*, 1997 WL 599384 at *3 ("Under *Wilton*, district courts must assess whether a declaratory judgment question can better be settled in the

proceeding pending in state court, with a presumption toward state adjudication especially in matters of state law.").

    2.    The Court should decline to entertain this Declaratory Judgment Action in favor of the prior-filed New Jersey Action.

While neither *Brillhart* nor *Wilton* articulated a specific and exclusive list of factors that govern an abstention analysis, courts typically evaluate the following questions: (1) whether the questions in controversy can be resolved in the concurrent proceeding; (2) whether abstention would help avoid piecemeal litigation; and (3) whether the use of a declaratory judgment would increase the friction between sovereign legal systems or improperly encroach on the domain of a state court and the related question of whether the proposed declaratory judgment remedy is being used merely for procedural fencing. *See Wilton*, 515 U.S. at 282-83; *Brillhart*, 316 U.S. at 495-96; *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). Each of these factors weighs decidedly in favor of abstention here.

    (i)    The parties' controversy can be better resolved in the New Jersey Action.

The New Jersey Action not only provides a complete opportunity to ventilate all of the questions in controversy here, it affords a far better means to do so. This declaratory judgment action, if litigated to conclusion in this Court, cannot settle all of the legal issues involved because all parties in interest, namely Fink, Biller and other to be named parties are not present here. *See Nat'l Union Fire Ins.*, 108 F.3d at 22 ("[T]he district court's inquiry ... should entail consideration of, *inter alia,* whether the claims of all parties in interest can satisfactorily be adjudicated in [the parallel] proceeding.") (*quoting Wilton*, 515 U.S. at 283, and *Brillhart*, 316 U.S. at 495) (internal citations and quotation omitted). Fink, as the insured and principal participant in the fraud perpetrated here, obviously plays a critical role in allowing for a full adjudication of the dispute. The same is true of Biller, the agent appointed and authorized to

solicit and present American General with applications for life insurance subject to the terms of a valid and enforceable contract with the company. Biller owed American General a fiduciary duty under the parties' contract to submit to American General only those applications for insurance that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures. American General alleges that rather than faithfully complying with the parties' agreement, Biller orchestrated or conspired with others to orchestrate the scheme at issue here intended to defraud American General. American General expects that these "others," presently named as John Doe defendants, will be identified through discovery and named individually in the New Jersey Action so as to ensure that American General's claims against *all* participants to the fraudulent scheme are fully and properly adjudicated.

Where, as here, a concurrent affirmative action offers a more comprehensive vetting of the legal issues at stake, courts in this Circuit routinely abstain from hearing declaratory judgment actions. On that basis, for example, in *North American Airlines, Inc. v. Int'l Bhd. of Teamsters*, No. 04 Civ. 9949, 2005 WL 646350, at *21 (S.D.N.Y. Mar. 21, 2005), the court dismissed the declaratory judgment complaint for just that reason:

> [T]here is nothing that [the declaratory judgment plaintiff] can hope to achieve in this [declaratory judgment] action that it could not attempt to gain in the California Action. On the other hand, because of the limited nature of this action ... there is reason to question whether the [declaratory judgment defendant] could in this case vindicate all of the interests it is pursuing in the California Action.

*Id.* at *21; *see also Travelers Indemn. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800 (WHP), 2004 WL 193564, at *3 (S.D.N.Y. Feb. 3, 2004) (finding "abstention is appropriate" where, as here, "the action before this Court and the Illinois Action are parallel, as there is an

overwhelming commonality of issues and parties"); *Machat*, 1997 WL 599384, at *3 (dismissing

declaratory judgment action); *Caisse National de Credit Agricole v. Bank of Tokyo-Mitsubishi*

*Trust Co.*, No. 97 Civ. 588 (PKL), 1997 WL 345216, at *5 (S.D.N.Y. June 20, 1997) (dismissing

claims for declaratory relief that "are clearly duplicative of the claims in the State Declaratory

Action and [where] the questions presented involve only issues of state law"); *CF Van Wagner*

*Enters., LLC v. Brown*, 367 F.Supp. 2d 530, 531 (S.D.N.Y. 2005) ("Because all relevant parties

have already been joined in a single action before the state court, which is competent to grant

complete relief on all claims and counterclaims at issue in the instant case, proceeding with the

federal action at this time would needlessly duplicate the state court proceedings and generate the

risk of inconsistent outcomes.").

Because all of the pertinent legal questions can be resolved in the New Jersey Action, and

because important parties whose rights will be determined by the ultimate resolution of the legal

issues in these concurrent actions are present in the New Jersey Action but not in this one, this

Court should abstain.

> (ii)   If allowed to proceed, this declaratory judgment action would result in
>        duplicative, piecemeal litigation.

Because Fink, Biller and the other yet named participants in the fraudulent scheme

alleged by American General are not parties here, this declaratory judgment action, if allowed to

proceed, would necessitate piecemeal litigation to obtain the complete relief which can, in

contrast, be afforded by the New Jersey Action. All of those parties -- and the plaintiff here --

are already parties to the New Jersey Action. To the extent the Trust has a valid basis for its

claims in its Declaratory Judgment Complaint here, those claims can be raised as defenses or

counterclaims in the New Jersey Action.

(iii)    The declaratory judgment sought by the Trust would improperly encroach
upon the domain of the New Jersey state courts.

The New Jersey state court is a more appropriate forum for resolution of the exclusively

state law issues involved here.  This Court repeatedly has dismissed insurance-related disputes

because such disputes are governed by state law and therefore are especially appropriate for state

court.  *See, e.g. Philips Elec. N. Am. Corp.*, 2004 WL 193564, at *2 ("district courts routinely

invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues

of state law"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, No. 00 Civ.

5007 (NRB), 2001 WL 194903 at *3-4 (S.D.N.Y. Feb. 27, 2001) (dismissing insurance-related

matter in favor of pending Texas state action where, *inter alia*, no federal law issues were

presented and the issues in the New York case either were already asserted in Texas or could be

asserted as defenses or counterclaims); *Reliance Ins. Co. of Illinois v. Multi-Fin. Sec. Corp.*, No.

94 Civ. 6971 (SS), 1996 WL 61763 at *3-4 (S.D.N.Y. Feb. 13, 1996) (dismissing insurance-

related matter, holding that "[t]ipping heavily in favor of abstention in this case … is the fact that

state law will govern the outcome of this action.").  *See also Allstate Ins. Co. v. Valley Physical

Med. & Rehab., P.C.* , 475 F. Supp. 2d 213, 234 (E.D.N.Y. 2007) ("The absence of federal issues

in a declaratory judgment action weighs heavily in favor of abstention.").  American General, as

master of its complaint and the entity whose rights have been placed at risk by Defendants'

(including the Trust's) fraudulent scheme perpetrated in New Jersey, was entitled to pursue relief

in New Jersey and invoke the protections afforded by New Jersey law under these circumstances.

The Trust should not be permitted to end-run American General's choice of forum.

B.    The Court Should Dismiss Or Stay This Action
      Because The New Jersey Action Was First-Filed.[3]

      1.    The First-Filed Rule Creates a Strong Presumption
            in Favor of the First-Filed New Jersey Action.

Even if it did not involve issues that make abstention appropriate, a dismissal or stay of

this case in favor of the New Jersey action would still be appropriate under the traditional first-

filed rule.[4]  Courts in the Second Circuit consistently have dismissed or stayed cases in favor of

---

[3] The first-filed rule applied by courts in the Second Circuit also has been applied by New
York's state courts and would have been applied here even if this case was not removed to this
Court. *See, e.g., Woolard v. Shaffer Stores Co.,* 272 N.Y. 304, 311 (1936) ("When … another
action between the same parties, in which all issues could be determined, is actually pending at
the time of the commencement of an action for a declaratory judgment, the court abuses its
discretion when it entertains jurisdiction"); *Conn. Gen. Life Ins. Co. v. Zurich Reinsurance, Inc.,*
No. 601334/00, 2002 WL 1880261, at *7 (N.Y. Sup. Ct. Mar. 7, 2002) (refusing to dismiss first-
filed New York action and emphasizing that New York "is the center of gravity for the parties'
dispute ..." because, *inter alia,* it was the principal place of business of the defendants and was
the state wherein took place "several important meetings" relating to the alleged oral reinsurance
agreement.) *See also* NY CPLR 3211(a)(4) (allowing party to move to dismiss if "there is
another action pending between the same parties for the same cause of action in a court of any
state or the United States ...."). Moreover, the New Jersey Court likely would deny any motion
to dismiss American General's first-filed New Jersey action based on the first-filed rule
applicable in the New Jersey state courts. *See, e.g. Yancoskie v. Del. Port Auth.,* 78 N.J. 321,
324 (1978).

[4] In one case, the court stated that abstention -- rather than the first-filed rule -- is the proper
analytical framework for a federal court to use when faced with a pending state court action
involving many of the same parties and issues. In *Radioactive, J.V. v. Manson,* 153 F. Supp. 2d
462, 477 (S.D.N.Y. 2001), the court dismissed the case before it in favor of the state court action
based on abstention, holding that the court's "exercise of jurisdiction will lead to duplicative
efforts, piecemeal litigation and the possibility of inconsistent determinations." Prior to
dismissing the action on abstention grounds, the court stated that the first-filed rule (as contrasted
with the abstention doctrine) does not apply where there are competing federal and state court
actions, as opposed to competing federal court actions. *Id.* at 473. Other cases decided by this
Court have not made this distinction, and have applied the first-filed rule to competing federal
and state actions. *See, e.g.,Quality King Distributors, Inc. v. KMS Research, Inc.* 946 F. Supp.
233, 237-39 (E.D.N.Y. 1996). *See also* NY CPLR 3211(a)(5) (allowing party to move to dismiss
if "there is another action pending between the same parties for the same cause of action in a
*court of any state or the United States* ..."). Unlike the first-filed rule, the abstention doctrine
does not require that the state court action be filed first in order for the federal court to dismiss

first-filed actions involving the same parties and issues in order to avoid the inconvenience, waste of resources and risk of inconsistent results inherent in having nearly identical cases proceed in different courts.  *See, e.g., First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (affirming dismissal of later-filed action based on "the well-settled principal in this Circuit that '[w]here there are two competing lawsuits, the first suit should have priority"); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) ("When two actions involving the same parties and issues are pending concurrently, courts in the Second Circuit follow the 'first-filed' rule whereby the court which first has possession of the action decides it."); *Spotless Enter., Inc. v. Accessory Corp.* 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (in dismissing the second-filed case, the court stated that "[t]he 'first-filed' rule is a well-settled principal of law").

This Court has emphasized the many important goals behind the first-filed rule: "it seeks to advance judicial economy, protect a plaintiff's choice of forum and avoid duplicative litigation.  It also protects parties from the considerable expense and potential for inconsistent judgments that duplicate litigation entails." *Reliance*, 155 F. Supp. 2d at 54 (citations omitted). *See also, In re Salomon Smith Barney Mu. Fund Fees Litig.*, No. 04 CIV. 4066, 2006 WL 2085979, at *22 (S.D.N.Y. July 26, 2006) (in staying claims in later-filed action, court emphasized that first-filed rule serves "the overriding policy considerations of conserving judicial resources and ensuring that the parties' controversy be resolved in a single determination."); *Spotless*, 415 F. Supp. 2d at 205 (first-filed rule is viewed by New York courts "as 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.") (citation omitted).

---

the federal action in favor of the state action.  Here, American General's motion should be granted regardless of which doctrine(s) is(are) applied.

Because of these important considerations, this Court has repeatedly stated that there is a "strong presumption" in favor of the first-filed action. For example, in *J. Lyons & Co., Ltd. V. Republic of Tea, Inc.*, 892 F. Supp. 486, 493 (S.D.N.Y. 1995), this Court held that "[t]he first-to-file rule, which places a strong presumption in favor of the first-filed suit, dictates that the New York actions be dismissed in favor of the forums of the first-filed actions." *Id.* (emphasis added). The burden to overcome this presumption is on the party (here, the Trust) seeking to proceed with the second action. *Pharmaceutical Res., Inc. v. Alpharma USPD, Inc.,* No. 02 Civ. 1015, 2002 WL 987299, at *2-5 (S.D.N.Y. May 13, 2002).

2.     The First-Filed New Jersey Action is Substantially Similar To This Case.

As noted by courts in the Second Circuit, "[a]pplication of the [first filed] rule requires that both cases have identical or substantially similar patterns ands claims." *See, e.g., Spotless*, 415 F. Supp. 2d at 205. The key issue is whether there is "substantial overlap." *Id.*

This later-filed action involves the plaintiff in the first-filed New Jersey Action (American General), and concerns the validity of the Policy at issue in the New Jersey Action. The Trust seeks judgment declaring that the Policy is in force and effect and that American General's denial of coverage is null and void, while the New Jersey Action, at its core, seeks the opposite relief – a ruling that the Policy is void *ab initio*. In that sense, this action is a near mirror of the New Jersey Action. That the claims in both actions need not be completely identical is particularly true where, as here, there is nothing to prevent any allegedly new claims asserted in this later-filed action from being decided in the first-filed action. *Gyadu v. Hartford Ins. Co.,* 133 F.3d 907 (2d Cir. 1998) (affirming district court's dismissal in favor of first-filed action, and holding that even though later-filed action addressed events which occurred after the

first action was filed, the plaintiff in the later-filed action "still had the opportunity to raise [those] causes of action … in the first action").

As stated by a court in a similar situation, "[t]o say that there is 'substantial overlap' between the two cases would be an understatement[;] [t]he Court finds that these cases are nearly identical." *Spotless*, 415 F. Supp. 2d at 206.  Thus, there is a "strong presumption" in favor of American General's first-filed action.

3.   Plaintiff Cannot Overcome the Strong First-Filed Presumption Where Neither Special Circumstances Nor the Balance of Convenience Points to the Later-Filed New York Action.

Courts have recognized a narrow exception to the fist-filed rule, where there are either "special circumstances" or a "balance of conveniences" in favor of the second-filed action.  "The burden of showing such special circumstances or a balance of conveniences is on the party seeking to proceed with the second action." *Quality King*, 946 F. Supp. at 237.  Here, plaintiff cannot show either the "special circumstances" or the "balance of conveniences" necessary to overcome the strong presumption in favor of the first-filed New Jersey Action.

This Court has emphasized that the party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception.  "Special circumstances justifying an exception to the rule exist where the first suit constitutes an 'improper anticipatory filing' or was motivated solely by forum shopping." *Reliance*, 155 F. Supp. 2d at 54 (citation omitted).  An anticipatory filing is "when a party brings a declaratory judgment action after receiving notice of a planned lawsuit by the other party." *AbovePeer, Inc. v. Recording Indus. Ass'n of Am., Inc.* 166 F. Supp. 2d 655, 658 (N.D.N.Y. 2001).  Forum shopping occurs when a party selects a forum with only a slight connection to the factual circumstances of its action, or where form shopping alone motivated the choice.

Here, there is no evidence of forum shopping or an anticipatory filing. To the contrary, New Jersey is the state with the greatest connection to this dispute and the most natural choice of forum. New Jersey is the state (i) where the Defendants completed and executed the Policy application; (ii) where both the Trust and Biller resided; (iii) where Biller completed the agent's report; and (iv) where Fink and Landau completed and executed the American General Financial Questionnaire. Given these contacts, there is no credible argument that New Jersey is a mere forum-shopping locale. Moreover, American General did not have knowledge that plaintiff intended to file suit against it, nor did American General have knowledge that plaintiff would choose to file suit in New York, rather than in New Jersey, thereby precipitating this forum battle between the parties. There simply are no "special circumstances" that would allow plaintiff to meet its burden of overcoming the strong presumption in favor of American General's first-filed New Jersey Action.

Similarly, plaintiff cannot reasonably argue that the "balance of convenience" justifies departure from the first-filed action presumption. *Reliance*, 155 F. Supp. 2d at 55. The factors considered as part of the balance of convenience are: (1) the convenience of the witnesses, as well as the availability of process to compel their attendance if unwilling; (2) the location of relevant documents and ease of access to sources of proof; (3) the convenience and relative means of the parties; (4) the locus of the operative facts; (5) the forums' respective familiarity with the governing law; (6) the weight accorded to the plaintiff's choice of forum; (7) trial efficiency and the interest of justice; and (8) any other relevant factors special to the two cases. *Spotless*, 415 F. Supp. 2d at 207.

Between the parties residing in New Jersey, the fact that New Jersey was the locus of the operative facts and that the New Jersey court will be most familiar with the New Jersey law that

17

should apply here, and the great weight that should be afforded to American General's selection of that forum, the balance of the conveniences does not weight in favor of this action, much less rebut the strong presumption in favor of the first-filed New Jersey Action.

Given that there are neither the special circumstances nor balance of conveniences necessary to bring this case within the narrow exception to the first-filed rule, this Court should dismiss or stay this second-filed action.

IV. CONCLUSION

For these reasons, American General respectfully requests that this Court enter an Order dismissing this action pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, staying the matter pending the resolution of the first-filed New Jersey Action, and granting such other and further relief in favor of American General as this Court deems just and proper.

Dated: New York, New York
February 10, 2011

Andrew P. Fishkin
Steven M. Lucks
EDWARDS ANGELL PALMER & DODGE LLP
750 Lexington Avenue
New York, New York 10022
212.308.4411
afishkin@eapdlaw.com
slucks@eapdlaw.com
Attorneys for Defendant
*American General Life Insurance Company*

NYC 369418.3