# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| The C Fink Family Trust by its trustee Zalmen Landau, | Index No.: |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| American General Life Insurance Co., | |
| Defendant. | |

Plaintiff, The C Fink Family Trust by its trustee Zalmen Landau ("Fink Trust"), by its attorneys, Schindel Farman, Lipsius, Gardner & Rabinovich LLP, for its complaint for declaratory relief, states:

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

1. Fink Trust is a New York trust formed and governed under the rules of New York.

2. American General Life Ins. Co. ("AIG") is a Texas insurance corporation that regularly sells policies insuring the life of New York residents.

3. On or about May 22, 2008 defendant issued Life Insurance policy number U10061721L insuring the life of Chaim Fink (hereinafter the "Policy").

4. The Fink Trust is the owner of the Policy.

5. Defendant, by letter dated April 22, 2010, notified plaintiff that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before June 22, 2010 then the Policy would lapse for failure to pay premiums. Exhibit A.

6. On June 15, 2010 Fink Trust paid $100,200 in premium payments Exhibit B.

7.     Defendant, by letter dated July 14, 2010, notified plaintiff that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before September 13, 2010 then the Policy would lapse for failure to pay premiums. Exhibit C.

8.     On September 1, 2010, Fink trust paid $100,500 in premium payments. Exhibit C.

9.     Defendant, by letter dated July 15, 2010 declared the policy lapsed for non-payment of premium. Exhibit D.

## AS FOR A FIRST CAUSE OF ACTION

10.     The premium payments were made in accordance with the policy terms and the premium notices sent by Defendant.

11.     Defendant failed to send notice of cancellation in accordance with the terms of the Policy.

12.     Defendant failed to send notice of cancellation in accordance with the law.

13.     Defendant is estopped from canceling the Policy.

14.     Defendant has waived its right to cancel the Policy.

15.     Under case law or applicable statute, defendant's attempted cancellation of the Policy is unlawful.

16.     By reason of the foregoing, plaintiff is entitled to a declaration that the Policy is in full force and effect, and to a declaration requiring defendant to reinstate the Policy.

17.     No claim has been made under the Life Insurance Policies, as the insured person, Chaim Fink is alive.

18.     Plaintiff is entitled to a declaration that the denial of coverage is null and void.

**WHEREFORE,** Plaintiff demand judgment of this Court against defendant, declaring the Policy is in full force and effect, the Policy must be reinstated at the original premium rate;

2

the denial of coverage by defendant is null and void, and awarding plaintiff's costs of suit,

attorneys' fees, and such other relief as the Court may deem proper and just.

Dated:  New York, New York
        November 2, 2010

                             SCHINDEL, FARMAN, LIPSIUS,
                             GARDNER & RABINOVICH LLP
                             Attorney for Plaintiff

        By:

                             David BenHaim
                             14 Penn Plaza, Suite 500
                             New York, New York  10122
                             (212) 563-1710
                             File No.: 4421.0001

# EXHIBIT B

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Robert P. Lesko
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
**Attorneys for Plaintiff, American General Life Insurance Company**

FILED

MAY 2 1 2010

SUPERIOR COURT, OCEAN COUNTY

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | SUPERIOR COURT OF NEW JERSEY. LAW DIVISION: OCEAN COUNTY DOCKET NO: L 1954-10 |
| Plaintiff, | |
| vs. | |
| CHAIM FINK, the C. FINK FAMILY TRUST, ZALMEN LANDAU, as Trustee of the C. FINK FAMILY TRUST, ISRAEL BILLER, and JOHN DOES 1-10. | **COMPLAINT** |
| Defendants. | |

Plaintiff, American General Life Insurance Company ("American General"), having its

principal place of business at 2929 Allen Parkway, Houston, Texas, 77019, by and through its

undersigned counsel, and by way of Complaint against defendants, Chaim Fink ("Fink"), the C.

Fink Family Trust ("the Trust"), Zalmen Landau, as Trustee of the C. Fink Family Trust ("the

Trustee" and/or "Landau"), Israel Biller, individually, ("Biller"), and John Does 1-10

(hereinafter collectively referred to as "Defendants"), states as follows:

### Introduction.

1. American General seeks a declaration from this Court that Flexible Premium

Adjustable Life PolicyU10061721L ("the Policy") issued by American General to the Trust in

the amount of $8,000,000 and insuring the life of Fink is void *ab initio* based upon material

misrepresentations in the application for the Policy and because the Trust lacked an insurable

interest in the life of Fink at the time of application for and issuance of the Policy. In addition

and/or in the alternative, American General seeks an award of compensatory and exemplary

damages arising out of said transactions and American General's subsequent administration and investigation of the Policy and the transaction.

2.      In the application for the Policy and during the underwriting process, Defendants made fraudulent misrepresentations to American General and/or encouraged, facilitated, aided, and abetted said fraudulent misrepresentations to American General concerning Fink's personal net worth and income. Specifically, Defendants misrepresented that Fink had an annual income of $1,800,000 and a net worth of $22,150,000. However, American General's investigation reveals that Fink's annual income and net worth was materially less than what Defendants represented in connection with the application for the Policy.

3.      Defendants also fraudulently misrepresented in the application the reason for which the Policy was sought. Specifically, Defendants represented that the reason for the Policy was "Estate Planning," meaning preservation of the insured's purportedly sizeable estate from anticipated estate taxes. However, neither Fink nor the Trust nor any Defendant at any time relevant to this matter had any expectation or belief that the Policy was to be purchased for purposes of "Estate Planning" or would otherwise inure to the benefit of Fink's estate or her natural heirs or any other person or entity possessing an insurable interest in his life. Rather, Defendants at all relevant times knew and understood that the sole purpose of the Policy was to create an illegal wagering contract upon Fink's life by ceding all controlling and beneficial interest in the Policy to persons and/or entities who are strangers to Fink with no insurable interest in his life. Defendants at all times intended to transfer the beneficial and/or ownership interest in the Policy to such persons and/or entities. The Trust and its ostensible ownership of the Policy was and is a mere sham as part of common scheme employed by defendants, generally known as Stranger-Originated Life Insurance ("STOLI"), and perpetrated in an attempt to

2

circumvent applicable laws and public policy pertaining to insurable interest. As such, the Trust lacked any insurable interest in the life of Fink, and the Policy is, therefore, void *ab initio*.

4.     Each of the defendants knew that all of the relevant representations were false or recklessly disregarded the veracity of the representations, and further knew that the transaction was consummated through fraud and deception, but each defendant nonetheless encouraged, facilitated, aided and abetted, transmitted and/or directly made representations to American General with the intention of defrauding American General into issuing the Policy.

5.     Accordingly, American General demands, together or in the alternative, rescission *ab initio* of the Policy and restitution of American General to its original position prior to the fraud, equitable remedies to include the imposition of constructive trusts with tracing as necessary, restrictions on future conduct, compensatory and exemplary damages, costs of investigation and suit, monetary interest, and attorneys fees.

## Jurisdiction, Parties, and Venue.

6.     Venue lies within Ocean County because one or more of the defendants resides in Ocean County a substantial part of the events and omissions giving rise to the claims occurred in Ocean County.

7.     American General is a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas, 77019.

8.     Upon information and belief, Fink is a citizen of the State of New York, and maintains his permanent residence at 626 Wythe Place #4-5, Brooklyn, NY 11211.

9.     Upon information and belief, the Trust is an unincorporated jural entity formed under the laws of the State of New Jersey and subject to the ownership and control of its Trustee,

3

Landau. Upon information and belief, the Trust has an address of 1 Cathedral Drive, Lakewood, NJ.

10.     Upon information and belief, Landau is a citizen of the State of New York and maintains his permanent residence at 1178 59th Street, Apt 1-T, Brooklyn, NY 11219-4999.

11.     Upon information and belief, Biller is a citizen of the State of New Jersey and maintains his permanent residence at 215 E 5th Street, Lakewood, New Jersey.

12.     Upon information and belief and subject to the completion of American General's investigation, John Does 1 through 10 are presently unknown individuals and/or entities who have facilitated, encouraged, directly participated in, and/or aided and abetted the fraud as against American General and in the effort to gain from defendants' attempts to circumvent applicable insurable interest laws and public policy.

## Stranger-Originated Life Insurance

13.     Defendants engaged in a scheme referred to as Stranger-Owned or Stranger-Originated Life Insurance ("SOLI "or "STOLI"), or Investor-Owned or Investor-Originated Life Insurance ("IOLI") that typically involves the acquisition of outright or beneficial ownership interest in life insurance policies with large face amounts by investors who are strangers to the person insured and who have no insurable interest in the life of the person insured. Such arrangements constitute illegal wagering contracts contrary to statutory law and public policy.

14.     The investor strangers directly or indirectly assume the obligation of paying premiums due on the policy in exchange for their interest in it, including the right to all or a substantial portion of the death benefits to be paid when the insured dies. Of course, the sooner the insured dies, the fewer premiums the investor strangers are required to pay and the higher the return on their investment. In an attempt to ensure the highest possible rate of return through

4

prompt pay-out of the death benefits, the investor strangers typically recruit elderly individuals to participate in the application process and serve as the proposed insured.

15.    Similarly, the higher the death benefit on the policy, the greater the ultimate return on the investor strangers' investment. Thus, as in this case, the net worth and other material information concerning the proposed insured is often inflated or otherwise misrepresented in order to qualify for the most valuable policies with the highest available death benefits at the lowest available premiums. In some cases, even the health and medical background of the proposed insured is misrepresented.

16.    These arrangements violate state statutory and common law insurable interest laws and are contrary to public policy because the strangers or investors acquire significant speculative economic and pecuniary interests which are best served by the prompt and premature death of the person insured rather than his or her continued life.

17.    The investor strangers have devised various schemes to conceal their lack of insurable interest and circumvent insurable interest laws and public policy. One such scheme – like the one perpetrated by the defendants in this case – involves the formation of an irrevocable life insurance trust ostensibly established by the insured. Perpetrators of the fraud identify a willing proposed insured, match the proposed insured with investor strangers to fund the premiums required to acquire the policy, arrange for preparation of a trust document, and arrange for any other services necessary to conceal the fraud and secure issuance of the policy. The beneficiary of the sham trust may or may not be an individual or group of individuals with an insurable interest in the insured. However, in all cases, the trust is formed as a sham with the specific present intent and structured to facilitate transfer of the outright or beneficial ownership interest in the life insurance policy after it has been issued.

5

18.    The proposed insured is typically offered something of value, such as immediate cash payments, in exchange for his or her participation in the application process. The proposed insured is often provided false or misleading assurances by the perpetrators of the fraud that the transaction is legal and appropriate. In any event, as in this case, the proposed insured is nevertheless culpable and either intentionally, willfully and wantonly, recklessly or negligently complicit in the fraud because he or she elects to turn a "blind eye" and accept such bald assurances without having made any reasonable independent inquiry as to the propriety or legality of the transaction or the veracity of the representations submitted to the insurance company in his or her name in support of the application for insurance.

### Application and Misrepresentations

19.    On April 4, 2008, Fink, Landau, and Biller executed Part A Application ("the Application"), a copy of which is attached hereto as **Exhibit A.**

20.    The Application was purportedly executed in Lakewood, NJ.

21.    In response to Question 1 on the Application, Fink, Landau, and Biller represented that Fink had an annual household income of $1,800,000 and a net worth of $22,150,000.

22.    In response to Question 3 on the Application, Fink, Landau, and Biller identified the owner of the proposed policy as the Trust.

23.    In response to Question 9 on the Application, Fink, Landau, and Biller identified the beneficiary of the proposed policy as the Trust.

24.    In response to Question 4 on the Application, Fink, Landau, and Biller represented that the reason for the Policy was "estate planning."

6

25.     By executing the Application, Fink, Landau, and Biller acknowledged and agreed that American General would rely upon the information provided in all parts of the Application when determining whether to issue the Policy.

26.     Furthermore, Fink, Landau, and Biller promised that the information in the Application was true and complete as follows:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statement contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.

27.     Biller completed and executed an Agent's Report on April 7, 2008.

28.     In the Agent's Report, Biller represented to American General that he was not "aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability."

29.     On May 7, 2008, Fink and Landau completed and executed a Financial Questionnaire in further support of their application for the Policy, a copy of which is attached hereto as **Exhibit B**. The Financial Questionnaire was purportedly executed in Lakewood, NJ.

30.     Question 1 on the Financial Questionnaire requested a statement of Fink's personal pre-tax income from all sources for the current fiscal year and for the previous fiscal year.

7

31. In response to Question 1 on the Financial Questionnaire, Fink and Landau represented Fink's personal pre-tax income as $1,800,000 for the current fiscal year (2008) and $1,722,000 for the previous fiscal year (2007).

32. Question 2 on the Financial Questionnaire asks, "what is your approximate net worth, i.e., assets minus liabilities? (if necessary, give details in 'Remarks' below)."

33. In response to Question 2 on the Financial Questionnaire, Fink and Landau represented Fink's approximate net worth as $22,150,000 for the current fiscal year (2008) and $20,025,000 for the previous fiscal year (2007). In the "Remarks" section, Fink and Landau commented "the assets are without the current annual income."

34. Question 4 on the Financial Questionnaire asks, "How was the need for this new amount of coverage determined?"

35. In response to Question 4 on the Financial Questionnaire, Fink and Landau responded, "Net worth assets calculated with expected inheritance taxes."

36. On May 14, 2008, a representative from Exam One interviewed Fink, or an individual claiming to be Fink.

37. Fink told the representative that his net worth is in excess of $22,000,000 and that the source of his income is real estate. Fink also told that representative that his total unearned income is $1,775,000. Thereafter, Exam One transmitted this information to American General in the form of an inspection report.

38. In reliance upon all the foregoing representations, American General executed, issued, and caused to be delivered to the Trust the Policy in the amount of $8,000,000, with an issue date of May 22, 2008, insuring the life of Fink, and naming the Trust as beneficiary.

8

39.    On June 3, 2008, Landau, Biller, and Fink executed a Policy Acceptance and Amendment of Application form, purportedly in Lakewood, New Jersey. The Policy Acceptance and Amendment of Application form contained amendments to certain answers regarding Fink's health history as reported on the Part B Life Insurance Application.

40.    American General incurred costs in connection with the issuance and administration of the Policy.

## Defendants Misrepresented Fink's Income and Net Worth

41.    American General has conducted a review and investigation of the application for the Policy and the representations made in connection with the application.

42.    In the course of its investigation, American General discovered for the first time that Fink, Biller, the Trust, and Landau materially misrepresented Fink's net worth and personal income in connection with the application for the Policy.

43.    American General's investigation revealed that Fink has no interest in any real estate holdings, contrary to the representation that the source of his alleged $1,800,000 annual income is real estate. In fact, American General's investigation revealed that the residence in which Fink currently resides, 626 Wythe Place #4-5, Brooklyn, NY 11211, is classified as public housing.

44.    On May 17, 2010, counsel for American General sent a letter request to Fink at his residence via overnight mail, requesting that Fink call counsel immediately upon receipt. Neither Fink nor any person on behalf of Fink called or otherwise contacted counsel for American General in response to the May 17th letter.

9

## Defendants Misrepresented the Reason for Insurance

45.    Upon information and belief, neither Fink, Biller, Landau, or the Trust had at any time relevant to the application for issuance of the Policy, any intention of maintaining a controlling or beneficial ownership interest in the Policy or the benefits that might become payable thereunder.  Rather, at all times relevant, Fink, Biller, Landau, and the Trust intended to sell, surrender, or otherwise fully encumber all controlling or beneficial ownership interest in the Policy and its prospective benefits in exchange for immediate pecuniary gain through financial transactions with John Does 1 - 10.

46.    Based upon information and belief, and subject to the completion of American General's investigation, contrary to Fink's, Biller's, Landau's, and the Trust's representations to American General, neither Fink, Biller, Landau, or the Trust intended to pay any premiums for the Policy from Fink's personal assets or assets transferred by Fink to the Trust.

47.    Fink, Biller, Landau, and the Trust did not reveal their present intentions to sell, transfer and/or otherwise encumber the ownership interests for the benefit of John Does 1-10 at the time they completed the application or accepted delivery of the Policy and paid the first premium.  Rather, Fink, Biller, Landau, and the Trust intentionally concealed their intentions in order to deceive American General into approving, issuing, and delivering the Policy as applied for.

48.    Because Fink, Biller, Landau, and the Trust had previously formed the intention to sell, surrender, or otherwise fully encumber the Policy, Landau and/or the Trust lacked an insurable interest in Fink's life as of the date the Policy was issued.

10

## The Misrepresentations Were Material

49.     If American General knew the true facts regarding Fink's actual income and net worth and/or the true reason for applying for the Policy, American General would not have agreed to approve, issue, or deliver the Policy.

50.     American General reasonably relied upon the misrepresentations and omissions contained in the application for the Policy, and otherwise made by Fink, Biller, Landau, and the Trust in support of the application for the Policy.

51.     American General incurred costs in connection with the investigation regarding the misrepresentations and omissions of Fink, Biller, Landau, and/or the Trust.

### Count I
### (Material Misrepresentation)

52.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

53.     The response to Question 1 on the Application was false and failed to disclose Fink's true income and net worth.

54.     The response to Question 4 on the Application was false and failed to disclose the true reason for the Policy.

55.     The statement of acknowledgement and agreement by virtue of Fink's, Landau's and Biller's signatures on the Application for the Policy was false.

56.     The statements of Biller contained in the Agent's Report were false.

57.     The statements contained in the inspection report regarding Fink's income, net worth, annual income, and source of annual income, all of which were provided by Fink, were false.

11

58.    The statement contained in the Financial Questionnaire regarding Fink's income, net worth, and reason for insurance were false.

59.    Fink's true financial status, including his income and net worth, which was not disclosed in the Application or otherwise, was material to the risk undertaken by American General in issuing the Policy.

60.    Fink's true intention and reason for seeking issuance of the Policy, which was not disclosed in the Part A Application or otherwise, was material to the risk undertaken by American General in issuing the Policy.

61.    American General relied upon all of the statements submitted in support of the application for the Policy.

62.    American General's reliance upon the material misrepresentations and omissions in the application and/or in connection with the application was reasonable.

63.    If Fink, Biller, Landau, and/or the Trust had fully and completely disclosed Fink's income and net worth and/or true reasons for seeking issuance of the Policy, or if the same facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have executed, issued, or delivered the Policy or accepted premiums for the Policy.

64.    Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio* and of no force of effect since its inception, and American General never has been and never will become liable to anyone thereunder.

65.    American General has incurred substantial expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payment of commissions and fees in connection with issuance of the Policy, administration and servicing of

12

the Policy, investigation of the misrepresentations, fraud, and concealment outlined above, and commencement of the present litigation to enforce its rights.

66.    In light of the foregoing damages, expenses, and costs incurred by American General, American General should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs.  Without such retention and/or offset, the equitable remedies sought herein, including restitution, would be rendered futile or impossible.

67.    Notwithstanding the foregoing, American General stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy to the current owner of the Policy or as directed by this Court in accordance with American General's demand for rescission of the Policy and restitution of the parties to their pre-contract positions insofar as it is possible and equitable.

68.    Accordingly, American General hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks this Court's direction as to actual payment of the same.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the

13

original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## Count II
### (Fraud)

69.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

70.     The misrepresentations and failure to disclose Fink's true net worth in the application for the Policy were made and done knowingly by Fink, Biller, Landau, and the Trust

14

with intent to deceive American General into issuing and delivering the Policy.

71.    The misrepresentations and failure to disclose the true reasons for the Policy set forth in the Application were knowingly made, done, encouraged, aided and/or abetted by Fink, Biller, Landau, and the Trust with intent to deceive American General into issuing and delivering the Policy.

72.    Biller's misrepresentations contained in the Agent's Report were made and done knowingly by Biller with the intent to deceive American General into issuing and delivering the Policy.

73.    The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the Policy.

74.    If Fink, Biller, Landau, and/or the Trust had fully and completely disclosed Fink's true net worth, annual income, and/or true reason for the Policy prior to or at the time of the issuance or delivery of the Policy, American General would never have executed, issued, or delivered the Policy, nor would American General have accepted premiums for the Policy.

75.    Because of the intentional and fraudulent misrepresentations and concealment, the Policy is void *ab initio* and of no force and effect since its inception and American General never has nor will American General become liable to anyone thereunder.

76.    American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against

15

989234.1

costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq*. that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

16

## Count III
### (Lack of Insurable Interest)

77.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

78.    The sole purpose for creation of the Trust was to further the efforts of Fink, Biller, Landau, the Trust and John Does 1-10 to circumvent applicable insurable interest rules and public policy.

79.    The application for and purported ownership of the Policy by the Trust was merely a sham transaction intended to circumvent and violate applicable insurable interest rules and public policy.

80.    Therefore, at all times relevant to the application for the Policy at issue, the Trust lacked any insurable interest in the life of Fink.

81.    Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has and never will become liable to anyone thereunder.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.     A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq*. that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for

989234.1

cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 et seq. that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## Count IV
### (Declaratory Relief)

82.      American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

83.      An actual and justiciable controversy has arisen and now exists between American General and defendants concerning their respective rights and duties under the Policy.

84.    American General contends that because of the material and fraudulent misrepresentations and concealments regarding Fink's true net worth, income, and reason for the Policy, the Policy is void *ab inito* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

85.    American General further contends that because the Trust lacked any insurable interest in the life of Fink at the time the Policy was applied for and issued, the Policy is void *ab initio* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

86.    A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq*. that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.    In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq*. that upon American General's deposit with the Court of the total amount of premiums paid

19

under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

### Count V
### (Civil Conspiracy)

87.      American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

88.      Each of the defendants engaged in, facilitated, encouraged, aided and abetted and/or otherwise acted in furtherance of an overall scheme and conspiracy as detailed herein, all or portions of which scheme and conspiracy were known to each of each of them.

89.      Some or all of the defendants together conspired and agreed to devise and execute a scheme or plan to solicit elderly persons, including Fink, and to promote and facilitate the procurement of life insurance policies from insurers, including American General, for which said

20

applicants could not qualify based upon their true net worth, income, reasons for purchasing the insurance, and because of state insurable interest laws, which defendants endeavored to improperly circumvent or avoid.

90. Each defendant, individually and collectively, engaged in deceptive and fraudulent acts as more fully set forth elsewhere in this document in furtherance of the conspiracy, including but not limited to; meeting together for purposes of planning and executing the conspiracy; making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; causing, promoting, encouraging, facilitating, or aiding and abetting third parties in making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; providing or obtaining financing for the deceptive and fraudulent transaction; creating or causing to be created, authorizing, executing and otherwise promoting a sham insurance trust and or other artifices to temporarily hold ownership interest in the ill-gotten insurance policy.

91. American General has incurred substantial harm as a result of defendants' conspiracy, including but not limited to, monetary damage and exposure to potential current or future legal liability resulting from issuance of the illegal policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a. A declaration pursuant to N.J. Stat. § 2A: 16-50 et seq. that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position,

21

and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to N.J. Stat. § 2A: 16-50 *et seq.* that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

989234.1

## Count VI
### (Breach of Contract Against Biller)

92.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

93.    Biller was appointed and authorized to solicit and submit to American General applications for life insurance by virtue and subject to the terms and provisions of a valid and enforceable contract.

94.    Pursuant to the terms and provisions of said contract, Biller owed to American General a duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

95.    Biller breached his contract with American General.

96.    As a direct and proximate cause of Biller's breach of his contract with American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

## Count VII
### (Fiduciary Duty as to Biller)

97.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

98.    Pursuant to the terms and provisions of the contract entered into between and among American General, Independent Marketing Group ("IMG") and Biller, Biller owed to

23

989234.1

American General a fiduciary duty to submit to American General only those applications for life insurance that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures.

99. By virtue of the relationship between and among American General and IMG and Biller, and Biller's superior position and ability to evaluate and assess the eligibility, acceptability, insurability, and suitability of proposed insureds and appropriateness of transactions to be presented to American General for underwriting, Biller owed to American General a fiduciary duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

100. Biller breached his fiduciary duty to American General.

101. As a direct and proximate cause of Biller's breach of his fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

### Count VIII
### (Negligence – as to Biller)

102. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

103. Biller owed to American General a duty of care in executing his obligations as a duly appointed independent insurance broker, including but not limited to the duty to solicit and

989234.1

submit for underwriting only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Biller genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures, and otherwise consistent with law and public policy.

104. Biller breached his duty of care to American General.

105. Biller maliciously, willfully, wantonly, and recklessly disregarded his obligations to American General and the welfare of American General in breaching his duty of care to American General.

106. As a direct and proximate cause of Biller's breach of his fiduciary duty to American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Biller for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
Robert P. Lesko

Dated: May 21, 2010

25

989234.1

## CERTIFICATION PURSUANT TO RULE 4:5-1

The Undersigned hereby certifies that:

1.    To the best of his knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any other Court, nor is it the subject of a pending arbitration proceeding, nor is any such proceeding contemplated at this time by the plaintiff.

2.    To the best of her knowledge, information and belief, there are no parties that must be joined in this action.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
        Robert P. Lesko

DATED:  May 21, 2010

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that pursuant to Rule 4:25-4, Robert P. Lesko of the law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP is hereby designated as trial counsel in the above captioned litigation.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff, American General Life Insurance Company

By: _____
        Robert P. Lesko

DATED:  May 21, 2010

26

989234.1

## CERTIFICATION OF MAILING

I, Marisol Nieves, certify as follows:

I am employed by the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for Plaintiff, American General Life Insurance Company in the within matter.

I certify that the original and one copy of the within Complaint was sent for filing by Hand Delivery to the Clerk of Ocean County Superior Court, in Toms River, New Jersey, pursuant to the direct filing system on this same date.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Marisol Nieves

Dated: May 21, 2010

27

989234.1

# EXHIBIT C

SCHINDEL FARMAN, LIPSIUS,
GARDNER & RABINOVICH, L.L.P
4 Cornwall Drive, Suite 101
East Brunswick, New Jersey 08816
(732) 390-0166
Attorneys for Defendant
Zalmen Landau as Trustee of the C. Fink Family Trust

| American General Life Insurance Co., | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| Plaintiff, | LAW DIVISION OCEAN COUNTY |
| vs. | Docket No.: L-1954-10 |
| Chaim Fink, The C Fink Family Trust, Zalmen Landau as trustee of The C Fink Family Trust, Israel Biller and JohnDoes 1-10, | **NOTICE OF MOTION** |
| Defendant. | |

PLEASE TAKE NOTICE that on March 4, 2011, at 9:00 a.m., at the Superior Court of New Jersey, Ocean County Courthouse, located at 118 Washington Street, Toms River, NJ 08754, defendant Zalmen Landau as trustee of The C Fink Family Trust ("The Trust"), shall apply to the Superior Court of New Jersey, Law Division, Ocean County, pursuant to Rule 4:6-2 (a), (b), (c), (d), (f) and Rules 4:4-1, 4:28-1 and 4:37-2 of the Rules of Court of the State of New Jersey, for an Order dismissing the amended complaint for failure to serve this defendant and an indispensable party;

**PLEASE TAKE FURTHER NOTICE** that in support of this application, defendant The Trust shall rely upon the prior pleadings and proceedings had herein and the attached Memorandum of Law In Support of Motion, Affidavit of Zalman Landau in

Support of Motion for Summary Judgment, with attached Exhibits, Affirmation of David

BenHaim in Support of Motion for Summary Judgment, with attached Exhibits.


**CERTIFICATION AS TO FILING AND SERVICE:** We hereby certify that

we filed the originals of the Notice of Motion and supporting papers with the Motions

Clerk, Ocean County Courthouse, 118 Washington Street, Toms River, New Jersey

08754, and served copies of same upon all counsel of record.

Dated:  February 2, 2010
        East Brunswick, New Jersey

 

                   SCHINDEL, FARMAN, LIPSIUS
                   GARDNER & RABINOVICH LLP
                   Attorneys for Defendant Zalmen Landau as
                   Trustee of The C Fink Family Trust

                   BY: _____
                      David BenHaim
                   4 Cornwall Drive, Suite 101
                   East Brunswick, New Jersey  08816
                   Telephone No.: (732) 390-0166
                   File No.: 4421.0001

TO:    Wilson, Elser, Moskowitz, Edelman & Dicker LLP
        33 Washington Street
        Newark, New Jersey  07102-3017
        Attorneys for Plaintiff

| | |
|---|---|
| American General Life Insurance Co., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION |
| | OCEAN COUNTY |
| vs. | |
| | Docket No.: L-1954-10 |
| Chaim Fink, The C Fink Family Trust, Zalmen Landau as trustee of The C Fink Family Trust, Israel Biller and John Does 1-10, | |
| Defendant. | |

## CERTIFICATION OF DAVID BENHAIM

David BenHaim affirms the following under penalty of perjury:

1.     I am an attorney with the firm of Schindel, Farman, Lipsius, Gardner and Rabinovich, LLP, counsel for defendants. I make the following statement based upon my involvement as counsel in this matter and upon my review of the files and records maintained.

2.     Attached as Exhibit A is the Affidavit of Zalmen Landau.

3.     Attached as Exhibit B are copies of American General Life Insurance Co.'s demands for premium since May 2010.

4.     Attached as Exhibit C are copies of premium payments made by the Trust since March 2010.

5.     Attached as Exhibit D is a copy of the summons mailed to Zalmen Landau in November 2010.

Dated: February 2, 2011
East Brunswick, New Jersey

_____
David BenHaim

| | |
|---|---|
| American General Life Insurance Co., <br><br> Plaintiff, <br><br> vs. <br><br> Chaim Fink, The C Fink Family Trust, Zalmen Landau as trustee of The C Fink Family Trust, Israel Biller and John Does 1-10, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> OCEAN COUNTY <br><br> Docket No.: L-1954-10 <br><br> **AFFIDAVIT OF** <br> **ZALMEN LANDAU** |

STATE OF           )
                            ss:
COUNTY OF        )

I, ZALMEN LANDAU, being duly sworn, deposes and says:

1.    I am the Trustee of the C Fink Family Trust.

2.    I currently reside at 1425 51st Street, Apt. B7, Brooklyn, New York and I have been residing at that address for the past 20 months.

3.    I have never resided at 1178 59th street in Brooklyn, New York.

4.    Between May 21, 2010 and the present, American General did not serve the insured or me with a copy of the complaint, but instead, demanded additional premiums.

5.    On April 22, 2010, American General notified me that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before June 22, 2010 then the Policy would lapse for failure to pay premiums. On June 15, 2010, after this action was filed, I paid $100,200 in premium payments. American General kept this premium payment. Exhibit A.

7.    On July 14, 2010, American General notified me that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before September 13, 2010 then the Policy would lapse for failure to pay premiums. Exhibit B. On September 1, 2010, I paid an additional $100,500 in premium payments. American General kept both premium payment and, incredulously, by letter dated July 15, 2010, declared the policy lapsed for non-payment of premium. Exhibit C.

6.    On November 8, 2010, I made an additional payment of $10,000 in premium payments on the Fink policy which AIG accepted, deposited and never returned. Exhibit D

7.    In November 2010, American General mailed the summons dated June 28, 2010, to me but did not serve it. At about the same time, the summons dated June 28, 2010 was left at my door. The complaint was never mailed or served upon me at any point. Exhibit E.

8.    Last week, I made an additional payment of $100,000 which American General deposited.

9.    Chaim Fink, the insured, is my grandfather. Until the summer of 2009, my grandfather resided at 626 Wythe Place, Apt. 4L in Brooklyn.

10.    Prior to the commencement of this action, in the summer of 2009, Chaim Fink, the insured, traveled abroad and has not returned since. He has not been served.

11.    On December 20, 2010 a copy of the summons and complaint was left at Chaim Fink's previous address together with a notice that the action was dismissed against the Trust. Exhibit F.

2

ZALMEN LANDAU

Sworn to before me this
__3 1__ day of December, 2010

NOTARY PUBLIC

ARON WOLCOWITZ
Notary Public - State of New York
No. 01WO6210908
Qualified in Kings County
My Commission Expires September 8, 2013

3

**American General**
**Life Insurance Company**
*Member of American International Group, Inc.*
**PO BOX 4373 HOUSTON, TX 77210-4373**
**713/522-1111**

 **AIG AMERICAN GENERAL**

C-44001,040,0,AUTOGENI

April 22, 2010

### GRACE PERIOD NOTICE

THE C FINK FAMILY TRUST DATED 02-13-08
C/O ZALMEN LANDAN, TRUSTEE
626 WYTHE PL APT 4C
BROOKLYN NY  11211-6978

Policy Number:  U10061721L
Insured:        CHAIM FINK

Even though you may have been making regular premium payments on your policy, the
current values are insufficient to cover the monthly charges due April 22, 2010.  This
policy is in its grace period and will terminate without value unless a payment of
$100,166.66 is received prior to June 22, 2010.

The minimum quarterly premium required is 103,680.00.  If your billing amount is less
than this amount, future billings will be adjusted upon receipt of your grace period
payment.  If your policy has a loan, please pay your loan interest due.  Your policy
may have gone into grace due to unpaid loan interest.

We appreciate the confidence you have shown in us, and we thank you for your business.
If you have any questions or need additional assistance, please contact your servicing
agent:

                Israel O Biller
                1250 E Coast Dr
                Atlantic Beach Fl  32233-5520

or our Customer Service Center at 1-800/231-3655 or 1-888/436-5256
for Hearing Impaired/TDD.

B9700 / 000BL9855L

**American General**
**Life Insurance Company**
*Member of American International Group, Inc.*
**PO BOX 4373 HOUSTON, TX 77210-4373**
**713/522-1111**



C-44001,040,0,AUTOGENI

July 14, 2010                    **GRACE PERIOD NOTICE**

THE C FINK FAMILY TRUST DATED 02-13-08
C/O ZALMEN LANDAN, TRUSTEE
626 WYTHE PL APT 4C
BROOKLYN NY  11211-6978

Policy Number:  U10061721L
Insured:        CHAIM FINK

Even though you may have been making regular premium payments on your policy, the
current values are insufficient to cover the monthly charges due July 14, 2010.  This
policy is in its grace period and will terminate without value unless a payment of
$100,166.66 is received prior to September 13, 2010.

The minimum quarterly premium required is 103,680.00.  If your billing amount is less
than this amount, future billings will be adjusted upon receipt of your grace period
payment.  If your policy has a loan, please pay your loan interest due.  Your policy
may have gone into grace due to unpaid loan interest.

We appreciate the confidence you have shown in us, and we thank you for your business.
If you have any questions or need additional assistance, please contact your servicing
agent:

                Israel O Biller
                1250 E Coast Dr
                Atlantic Beach Fl  32233-5520

or our Customer Service Center at 1-800/231-3655 or 1-888/436-5256
for Hearing Impaired/TDD.

B9700 / 000BL9855L

---

merican General                 **PLEASE RETURN THIS PART**  July 14, 2010
ife Insurance Company
.O. Box 4373 Houston, TX 77210-4373          Policy No:   U10061721L
                                             Insured:     Chaim Fink

                                **GRACE PERIOD NOTICE**
The C Fink Family Trust Dated 02-13          Pay This Amount:  $100,166.66
C/o Zalmen Landan, Trustee
626 Wythe Pl Apt 4c                          Amount Enclosed: $
Brooklyn Ny  11211-6978

IF THE REQUIRED PAYMENT HAS ALREADY BEEN MAILED, PLEASE DISREGARD THIS NOTICE.

HSBC Bank USA, N.A. - Image Archive

THE C FINK FAMILY TRUST    4 ()

111
1-109/210

3/24/10
Date

Pay to the
Order of AMERICAN GENERAL LIFE        $ 100,000

ONE HUNDRED THOUSAND        Dollars

HSBC ⟨X⟩

Brooklyn, NY 11219

For_____ 0100671212    _____    MP

⑆021001088⑆671757512⑈ 0111

FOR DEPOSIT ONLY
AMERICAN GENERAL LIFE
AU LIFE ASSUR. INS. CO.
AIG LIFE INS. CO.
AIG PUERTO RICO
DELAWARE AMERICAN
PACIFIC UNION
UNITED STATES LIFE, NY

| Account Number | Date Posted | Ird Ind | Check Number | Amount | Sequence Number | Tran Code |
|---|---|---|---|---|---|---|
| 00000000671757512 | 04/02/2010 | | 0000000111 | 100000.00 | 7817508200 | 000111 |

HSBC Bank USA, N.A. - Image Archive

---

## HSBC Bank USA, N.A. - Image Archive

Photocopy

THE C FINK FAMILY TRUST

**EXPRESS**

113 2
1-108/210

06/13/2012 Date

Pay to the Order of *American General Life Insurance company* $ 100,200 ⁰⁰

*one hundred thousand two hundred dollars* ———————— Dollars

**HSBC** ⟨X⟩
Brooklyn, NY 11219

For *Chaim Fink #EU100617211*

⑆02100108846717575120⑆ 0113 ⑈00100200000⑈

FOR DEPOSIT CITIBANK, N.A. ONLY NEW CASTLE DE

| Account Number | Date Posted | Check Number | Amount | Sequence Number | Tran Code |
|---|---|---|---|---|---|
| 00000000671757512 | 06/18/2010 | 0000000113 | 100200.00 | 7816268283 | 000113 |

---

## HSBC Bank USA, N.A. - Image Archive

THE C FINK FAMILY TRUST

119
1-100/210

09/01/2010

Pay to the
Order of:  American General        $ 100,500 55

one hundred thousand five hundred dollars        Dollars

HSBC ⟨X⟩
Brooklyn, NY 11219
For Policy # U1006 1721        EXPRESS

⑆021001088⑆ ⑈671757512⑈ 0119        ⑈0010050000⑈

FOR        ﹥031108209﹤
DEPOSIT CITIBANK, N.A.
ONLY NEW CASTLE DE

```
09/21/10 09:10:15 7818180054    01
WS=VP1 OP=VP NODE=DIDS
20100920660230      1 ROLL=20100908-8
PRASHMITA       671757512
00010050000 0000000119


NAME NOT AVAILABLE FROM CIF
1524 39TH ST
BROOKLYN, NY 11218-4414
```

# Chase Online

**CHASE PREMIER (...8697)**

**Check Number:** 101          **Post Date:** 11/12/2010          **Amount of Check:** $10,000.00



**Need help printing or saving this check?**

**Need help printing or saving this check?**

© 2010 JPMorgan Chase & Co.

COMPANY,

      Plaintiff,

vs.

CHAIM FINK, the C. FINK FAMILY
TRUST, ZALMEN LANDAU, as Trustee of
the C. FINK FAMILY TRUST, ISRAEL
BILLER, and JOHN DOES 1-10.

      Defendants.

LAW DIVISION: OCEAN COUNTY

DOCKET NO:

**SUMMONS**

FROM THE STATE OF NEW JERSEY
TO THE ABOVE NAMED DEFENDANT(S):

Zalmen Landau, as Trustee of the C. Fink Family Trust
~~1178 59th Street, Apt. 1-T~~ /498 51 st st. apt 3-7
Brooklyn, NY 11219 ~~4999~~ 3616

    The Plaintiff, named above, has filed a lawsuit against you in the Superior Court of New
Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute
this complaint, you or your attorney must file a written answer or motion and proof of service with
the deputy clerk of the Superior Court in the county listed above within 35 days from the date you
received this summons, not counting the date you received it. (The address of each deputy clerk of
the Superior Court is provided.) A $135.00 filing fee payable to the Clerk of the Superior Court
and a completed Case Information Statement (available from the deputy clerk of the Superior
Court) must accompany your answer or motion when it is filed. You must also send a copy of
your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff,
if no attorney is named above. A telephone call will not protect your rights; you must file and
serve a written answer or motion (with fee) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter
a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment
is entered against you, the Sheriff may seize your money, wages or property to pay all or part of
the judgment.

**Error! Unknown document property name.**

_/s/ Jennifer M. Perez_
Jennifer M. Perez
Acting Clerk of the Superior Court

DATED:  June 28, 2010

Name/Address of Defendant to be Served:

Zalmen Landau
~~1178 60th Street, Apt. 1-F~~ 1485 51st St. APT. B-7
Brooklyn, NY ~~11219-4999~~ 3616

· Error! Unknown document property name.

2



JOE O'BRIEN
548 EAST 80TH ST. UNIT 10-L
NY, NY 10075

Personal & confidential

7010 1670 0000 4156 1076

Solomon Landau
1425 51st St. Apt. B-7
Brooklyn, NY 11219-3496

NY
11-3

1121993JBJ4

UNITED STATES
POSTAL SERVICE

1000

11219

U.S. POSTAGE
PAID
NEW YORK, NY
NOV 02, '10
AMOUNT

$3.24
00017530-01

| | |
|---|---|
| American General Life Insurance Co.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>Chaim Fink, The C Fink Family Trust, Zalmen<br>Landau as trustee of The C Fink Family Trust, Israel<br>Biller and John Does 1-10,<br><br>                    Defendant. | SUPERIOR COURT OF NEW<br>JERSEY<br>LAW DIVISION<br>OCEAN COUNTY<br><br>Docket No.: L-1954-10<br><br>Civil Action |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

SCHINDEL, FARMAN, LIPSIUS
GARDNER & RABINOVICH LLP
Attorneys for Defendant

4 Cornwall Drive, Suite 101
East Brunswick, New Jersey  08816
Telephone No.: (732) 390-0166
File No.: 4421.0001

Of Counsel:
David BenHaim, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT FACTS ....................................................................................................... 1

ARGUMENT ................................................................................................................... 3

   I.   American General failed to serve the Defendants ................................................. 3

   II.  American General failed to Timely Serve the Complaint ...................................... 5

   III. American General failed to serve a necessary party ............................................. 6

CONCLUSION ................................................................................................................ 8

## TABLE OF AUTHORITIES

**Cases**

*Ajamian v. Schlanger,*
20 N.J.Super. 246, 89 A.2d 702 (App.Div.1952) ................................................................ 6

*American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust,*
2010 WL 5253611 (D.N.J. 2010) .......................................................................................... 2

*American General Life Insurance Company v. Sussex*
*130 LLP*, 2:09-cv-05097-FSH -PS............................................................................................ 2

*Brew v. Stern,*
254 N.J.Super. 237, 603 A.2d 162 (Law Div. 1991) ...................................................... 5

*Kazepis v. North Jersey Holding Co.,*
111 N.J.Eq. 342, 162 A. 595 (E. & A.1932)....................................................................... 6

*Massachusetts Accident Co. v. Stone,*
127 N.J.Eq. 97, 11 A.2d 71 (E. & A. 1940).......................................................................... 6

*Merchants Indemnity Corp. v. Eggleston,*
N.J. 114, 179 A.2d 505 (1962).............................................................................................. 6

*Moschou v. DeRosa,*
192 N.J.Super. 463, 471 A.2d 54 (App.Div.1984) ...................................................... 5


**Treatises**

2 Restatement, Contracts (1932), s 484; ............................................................................ 6

5 Williston, Contracts (Rev. ed. 1937), s 1527, p. 4277; 16............................................ 6

3 Richards, Insurance (1952), s 434, p. 1456...................................................................... 6

16 Appleman, Insurance Law & Practice (1944), s 9254 ................................................ 6


**Rules**

Court of the State of New Jersey Rule 4:6-2(a), (b), (c), (d), (f) ...................................... 1

Court of the State of New Jersey Rules 4:4-1, 4:28-1 and 4:37-2 ................................... 1

iii

## PRELIMINARY STATEMENT

Defendants Zalmen Landau, Zalmen Landau as trustee of The C Fink Family Trust, (the "Trust") and Chaim Fink respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint pursuant to Rule 4:6-2(a), (b), (c), (d), (f) and pursuant to Rules 4:4-1, 4:28-1 and 4:37-2 for failure to serve the moving defendants.

## RELEVANT FACTS

On or about May 22, 2008 plaintiff issued Life Insurance policy number U10061721L insuring the life of Chaim Fink (hereinafter the "Policy"). Zalman Landau, the trustee of the Trust is Chaim Fink's grandson. On May 21, 2010, two days before the Policy became incontestable, American General Life Insurance Company ("American General") commenced this action seeking to void the Policy. The Track Assignment Notice was sent that very day.

To date, the trustee and the insured were never served with the summons and complaint.

In the complaint, American General sued the Trust, the insured and the American General agent that wrote the policy, Israel Biller. The first 5 counts were directed against all of the defendants while counts 6, 7 and 8 were directed against Biller for breach of the agent contract, breach of fiduciary duty and negligently producing the policy. The only defendant served by American General was its own agent, Israel Biller.

The decision to not serve Zalman Landau was calculated by American General to maximize profit. From the time American General commenced this action on May 21, 2010 and the present, American General collected over $250,000 in premiums. American General has been accused elsewhere of issuing high value elderly policies, such as the Fink policy, purely in order to keep the premiums with no intention of ever paying out a death benefit.

In *American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, 2010 WL 5253611

(D.N.J. 2010) the court held:

> Defendants argue that Plaintiff induced Defendants to purchase the Policy and pay premiums on same without ever having any intent of providing coverage under the Policy. Further, Defendants claim that, as alleged, the above-referenced facts more than adequately set forth their claim of fraud. Therefore, Defendants request that their motion to amend be granted....The Court finds that Defendants' allegations that Plaintiff: (1) was aware of the misrepresentations contained in Ellman's application but continued to collect premiums under the Ellman Policy; (2) knew of Ellman's true financial condition prior to issuing the Policy; (3) continues to collect premiums on 28 other policies all of which have been investigated and contain the same or substantially similar conditions as those present in the Ellman Policy, even though those conditions would allow Plaintiff to rescind same; (4) knew in 2006 that the Ellman Policy was IOLI, but consciously chose not to take any action with respect to same; (5) refuses to pay benefits under the Policy now that a claim has been made; and (6) not only seeks to rescind the Policy but to also keep all premiums paid, raise Defendants' right to relief on their fraud claim above the speculative level. Moreover, the Court finds that these allegations inject sufficient precision into Defendants' claim of fraud to put Plaintiff on notice of the exact misconduct with which it is charged as required by Rule 9(b). As a result, the Court finds that Defendants' proposed amendments with respect to their claim of fraud are not futile.

See, also, *American General Life Insurance Company v. Sussex 130 LLP*, 2:09-cv-05097-

FSH -PS.

Leslie Scism reports in the Wall Street Journal, January 3, 2011, that a similar lawsuit

alleges that U.S. Life's underwriters, "relaxed or disregarded their own underwriting guidelines,

disregarded any issues or 'red flags' raised in the underwriting process and did not seek

information that they now contend, after the fact, to be material." Investors Sue Insurers Over

Death Bets, Wall Street Journal, January 3, 2011, C1-C2.

On March 24, 2010, less than two months before filing this action, likely with knowledge

of the allegations in the complaint, American General accepted premiums in the amount of

$100,000.

2

On April 22, 2010, only one month before filing this action, American General notified the Trust that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before June 22, 2010 then the Policy would lapse for failure to pay premiums.   On June 15, 2010, after this action was filed, the Trust paid $100,200 in premium payments.  American General has retained this premium payment.

On June 28, 2010, American General issued the summons against the Trust but did not serve it.

On July 14, 2010, *after this action was commenced but before it was served*, American General notified Landau that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before September 13, 2010 then the Policy would lapse for failure to pay premiums.   On September 1, 2010, the Trust paid an additional $100,500 in premium payments.  American General kept both premium payment and, incredulously, by letter dated July 15, 2010, declared the policy lapsed for non-payment of premium.  American General continued accepting premiums through November.

American General purports to have served both Chaim Fink and Zalman Landau at the same address in Brooklyn: 626 Wythe Place. Zalman Landau resides on 51st Street and Chaim Fink left the country prior to the filing of this action and has not returned. Upon information and belief, American General is actually aware of this and was aware of these facts when it served the defendants at 626 Wythe Place[1].

**ARGUMENT**

**I.     American General failed to serve the Defendants**

---

[1] In November of 2010, American General mailed the summons but not the complaint to the 51st street address.

Service of a summons and complaint upon a defendant outside the state of New Jersey is performed in one of the three ways described in Rule 4:4-4(b)(1)(A)-(C). see, 4:4-5(a)-(b) or by publication in a newspaper, see 4:4-5(c).

Rule 4:4-4(b)(1)(A)-(C) provides as follows:

> (A) personal service in a state of the United States or the District of Columbia, in the same manner as if service were made within this State or by a public official having authority to serve civil process in the jurisdiction in which the service is made or by a person qualified to practice law in this State or in the jurisdiction in which service is made; or

> (B) personal service outside the territorial jurisdiction of the United States, in accordance with any governing international treaty or convention to the extent required thereby, and if none, in the same manner as if service were made within the United States, except that service shall be made by a person specially appointed by the court for that purpose; or

> (C) mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office. Mail may be addressed to a post office box in lieu of a street address only as provided by R. 1:5-2.

Here, American General claims to have mailed the summons and complaint to 626 Wythe Place. The defendants do not reside in 626 Wythe Place. Zalman Landau's residence and usual place of abode is on 51st Street, not Wythe Place and has been for the past 20 months while Chaim Fink does not presently reside and has not physically been present in the United States since the summer of 2009.

Having failed to personally serve or even mail the summons and complaint to the moving defendants, this action should be dismissed for lack of jurisdiction.

4

## II.    American General failed to Timely Serve the Complaint

It is submitted that American General failed to serve this complaint within the period mandated by the New Jersey Court Rules, and its failure to do so prejudiced the Trust.

New Jersey Court Rule 4:4-1 provides, "The plaintiff, the plaintiff's attorney or the clerk of the court may issue the summons. If a summons is not issued within 15 days from the date of the Track Assignment Notice, the action may be dismissed."

New Jersey Court Rule 4:37-2(a) provides dismissal without prejudice, "[f]or failure of the plaintiff to cause a summons to issue within 15 days from the date of the Track Assignment Notice the court in its discretion may on defendant's motion to dismiss an action or any claim against the defendant."

Furthermore, Rule 1:13-7 provides that an action pending for four months shall be dismissed on 60 days notice by the court. In this matter, upon information and belief, this court noticed the dismissal in December 2010. Upon information and belief, American General moved *ex parte* to reinstate the action against the Trust. It is respectfully submitted that the complaint must be dismissed. *Moschou v. DeRosa,* 192 N.J.Super. 463, 471 A.2d 54 (App.Div.1984); *Brew v. Stern*, 254 N.J.Super. 237, 603 A.2d 162 (Law Div. 1991).

Here, American General sued the Trust seeking rescission of the policy and to keep the premiums paid on the policy. Apparently, in order to maximize the amount it seeks to keep, American General not only failed to serve the complaint but continued to demand additional

5

premiums, implying that the policy was still valid and in good force, which was paid and never returned.[2]

It is respectfully submitted that the tactic chosen by American General was done in bad faith and accordingly, dismissal is proper.

## III.    American General failed to serve a necessary party

Chaim Fink, the insured under the American General policy, was named as a defendant in the action but not served. In accordance with Rule 4:4-4(b)(1)(B), in order to serve Mr. Fink, American General is required to proceed under the Hague Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. American General has not made attempt to serve him pursuant to the Hague Convention. American General has completely failed to prosecute this action in any meaningful way against Chaim Fink.

New Jersey Court Rule 4-28-1 provides, in relevant part:

---

[2] New Jersey courts have long recognized that an insurer may not maintain an action of rescission and continue to collect premiums. *Merchants Indemnity Corp. v. Eggleston*, N.J. 114, 115-116, 179 A.2d 505 (1962) ("When a contract is obtained by fraud, the law grants the injured party a choice. He may rescind or affirm. **If he rescinds, he must return what he received, here the premium for covering the Thunderbird, albeit the amount is quite small. On the other hand, he may choose to affirm the contract, whereupon he retains the consideration he received and has as well a claim for money damages for deceit, which in the circumstances of a liability policy would probably be at best a claim for such additional premium as should have been paid for the coverage. But the defrauded party must thus elect which course he wishes to follow. He cannot pursue both. If he elects to continue with the contract, the election is final and the contract is affirmed, not because he wants it to be, but because the law makes it so.** And if by his conduct he affirms the contract, he cannot be heard to say that he did not "voluntarily" or "intentionally" relinquish his right to call of the deal. *Massachusetts Accident Co. v. Stone*, 127 N.J.Eq. 97, 100, 11 A.2d 71 (E. & A. 1940); *Kazepis v. North Jersey Holding Co.*, 111 N.J.Eq. 342, 162 A. 595 (E. & A.1932); *Ajamian v. Schlanger*, 20 N.J.Super. 246, 249, 89 A.2d 702 (App.Div.1952); 2 Restatement, Contracts (1932), s 484; 5 Williston, Contracts (Rev. ed. 1937), s 1527, p. 4277; 16 Appleman, Insurance Law & Practice (1944), s 9254, p. 811. Neither consideration nor detriment is necessary to support the finality of the choice. 3 Richards, Insurance (1952), s 434, p. 1456. (emphasis supplied)")

4:28-1. Joinder of Persons Needed for Just Adjudication:

(a) Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

(b) Disposition by Court if Joinder Not Feasible. If a person should be joined pursuant to R. 4:28-1(a) but cannot be served with process, the court shall determine whether it is appropriate for the action to proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, the extent to which a judgment rendered in the person's absence might be prejudicial to that person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

It is abundantly clear from the complaint that Fink lies at the center of the allegations. Here, it has been alleged by American General that Fink was involved in creating the Trust to benefit total strangers and misrepresented his financial condition in order to do so. American General alleges that it is entitled to keep all the significant premiums paid on the Fink policy. American General's fraud claim, and its claim to the premiums, cannot proceed without prejudicing the Trust unless Fink, the insured, is a party.

It is respectfully submitted that Fink is an indispensable party, without whom, this action cannot proceed and accordingly, the action should be dismissed. By having failed to proceed

7

against Fink, or anyone other than its own agent, it is respectfully submitted that this action must be dismissed.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the action be dismissed with prejudice.

Dated: February 2, 2011
     East Brunswick, New Jersey

                              SCHINDEL, FARMAN, LIPSIUS
                              GARDNER & RABINOVICH LLP
                              *Attorneys for Defendant Zalmen Landau as Trustee*
                              *of the Trust of The Q Fink Family Trust*

                              BY: _____
                                  David BenHaim
                              4 Cornwall Drive, Suite 101
                              East Brunswick, New Jersey  08816
                              Telephone No.: (732) 390-0166
                              File No.: 4421.0001

8

# EXHIBIT D

**American General**
**Life Insurance Company**
*Member of American International Group, Inc.*

PO BOX 4373 HOUSTON, TX 77210-4373
713/522-1111



C-44001,040,0,AUTOGEN1

April 22, 2010                    **GRACE PERIOD NOTICE**

THE C FINK FAMILY TRUST DATED 02-13-08
C/O ZALMEN LANDAN, TRUSTEE
626 WYTHE PL APT 4C
BROOKLYN NY 11211-6978

Policy Number:  U10061721L
Insured:        CHAIM FINK

Even though you may have been making regular premium payments on your policy, the
current values are insufficient to cover the monthly charges due April 22, 2010.  This
policy is in its grace period and will terminate without value unless a payment of
$100,166.66 is received prior to June 22, 2010.

The minimum quarterly premium required is 103,680.00.  If your billing amount is less
than this amount, future billings will be adjusted upon receipt of your grace period
payment.  If your policy has a loan, please pay your loan interest due.  Your policy
may have gone into grace due to unpaid loan interest.

We appreciate the confidence you have shown in us, and we thank you for your business.
If you have any questions or need additional assistance, please contact your servicing
agent:

            Israel O Biller
            1250 E Coast Dr
            Atlantic Beach Fl  32233-5520

or our Customer Service Center at 1-800/231-3655 or 1-888/436-5256
for Hearing Impaired/TDD.

B9700 / 000BL9855L

**American General**
**Life Insurance Company**
*Member of American International Group, Inc.*
PO BOX 4373 HOUSTON, TX 77210-4373
713/522-1111



C-44001,040,0,AUTOGENI

July 14, 2010                          **GRACE PERIOD NOTICE**

THE C FINK FAMILY TRUST DATED 02-13-08
C/O ZALMEN LANDAN, TRUSTEE
626 WYTHE PL APT 4C
BROOKLYN NY 11211-6978

Policy Number:  U10061721L
Insured:        CHAIM FINK

Even though you may have been making regular premium payments on your policy, the
current values are insufficient to cover the monthly charges due July 14, 2010.  This
policy is in its grace period and will terminate without value unless a payment of
$100,166.66 is received prior to September 13, 2010.

The minimum quarterly premium required is 103,680.00.  If your billing amount is less
than this amount, future billings will be adjusted upon receipt of your grace period
payment.  If your policy has a loan, please pay your loan interest due.  Your policy
may have gone into grace due to unpaid loan interest.

We appreciate the confidence you have shown in us, and we thank you for your business.
If you have any questions or need additional assistance, please contact your servicing
agent:

            Israel O Biller
            1250 E Coast Dr
            Atlantic Beach Fl  32233-5520

or our Customer Service Center at 1-800/231-3655 or 1-888/436-5256
for Hearing Impaired/TDD.

B9700 / 000BL9855L

---

                           **PLEASE RETURN THIS PART**  July 14, 2010

nerican General
fe Insurance Company                   Policy No:  U10061721L
D. Box 4373 Houston, TX 77210-4373     Insured:    Chaim Fink

                           **GRACE PERIOD NOTICE**

The C Fink Family Trust Dated 02-13     Pay This Amount:  $100,166.66
C/o Zalmen Landan, Trustee
626 Wythe Pl Apt 4c                     Amount Enclosed:  $ _____
Brooklyn Ny 11211-6978

IF THE REQUIRED PAYMENT HAS ALREADY BEEN MAILED, PLEASE DISREGARD THIS NOTICE.

**EXHIBIT E**

HSBC Bank USA, N.A. - Image Archive

THE C FINK FAMILY TRUST

111
1-108/210

3/24/10
Date

Pay to the
Order of  AMERICAN GENERAL LIFE          $ 100,000

ONE HUNDRED THOUSAND                        Dollars

HSBC

Brooklyn, NY 11219

For  1/006/7212

| Account Number | Date Posted | Ird Ind | Check Number | Amount | Sequence Number | Tran Code |
|---|---|---|---|---|---|---|
| 00000000671757512 | 04/02/2010 | | 0000000111 | 100000.00 | 7817508200 | 000111 |

## HSBC Bank USA, N.A. - Image Archive

Photocopy

THE C FINK FAMILY TRUST

**EXPRESS**          113 2
                     1-108/210

06 13 2012   Date

Pay to the Order of *American General Life Insurance company*   $ 100,200 75

*one hundred thousand two hundred dollars* ———————   Dollars

**HSBC**
Brooklyn, NY 11229
For *Chaim Fink #U100617211*

⑆021001088⑆671757512⑈ 0113      ⑆00100 20000⑆

FOR         ⑆031100209⑆
DEPOSIT CITIBANK, N.A.
ONLY NEW CASTLE DE

| Account Number | Date Posted | Check Number | Amount | Sequence Number | Tran Code |
|---|---|---|---|---|---|
| 00000000671757512 | 06/18/2010 | 0000000113 | 100200.00 | 7816268283 | 000113 |

## HSBC Bank USA, N.A. - Image Archive

THE C FINK FAMILY TRUST

119
1-100210

09/01/2010   Date

Pay to the
Order of  American General                    $ 100,500 55

one hundred thousand five hundred dollars                    Dollars

**HSBC ⟨X⟩**
Brooklyn, NY 11219
For policy # U1006 1721 L          EXPRESS

⑈202100108846871757512⑈ 0119    ⑈0010050000⑈

FOR
DEPOSIT CITIBANK, N.A.
ONLY NEW CASTLE DE

09/21/10 09:10:15 7818180054    01
WS=VP1 OP=VP NODE=DIDS
20100920660230      1 ROLL=20100908-8
PRASHMITA     671757512
00010050000 0000000119


NAME NOT AVAILABLE FROM CIF
1524 39TH ST
BROOKLYN, NY 11218-4414

# Chase Online

**CHASE PREMIER (...8697)**

**Check Number:** 101          **Post Date:** 11/12/2010          **Amount of Check:** $10,000.00



**Need help printing or saving this check?**

**Need help printing or saving this check?**

© 2010 JPMorgan Chase & Co.

# Chase Online

T-Operations (...8627)

Check Number: 1023          Post Date: 12/17/2010          Amount of Check: $100,000.00



**Need help printing or saving this check?**



**Need help printing or saving this check?**

© 2011 JPMorgan Chase & Co.

# EXHIBIT F

COMPANY,

          Plaintiff,

vs.

CHAIM FINK, the C. FINK FAMILY
TRUST, ZALMEN LANDAU, as Trustee of
the C. FINK FAMILY TRUST, ISRAEL
BILLER, and JOHN DOES 1-10.

          Defendants.

LAW DIVISION: OCEAN COUNTY

DOCKET NO:

SUMMONS

FROM THE STATE OF NEW JERSEY
TO THE ABOVE NAMED DEFENDANT(S):

Zalmen Landau, as Trustee of the C. Fink Family Trust
~~1178 59th Street, Apt. L-1~~  *1495 51st St. apt 3-7*
Brooklyn, NY 11219 ~~4999~~ *3616*

The Plaintiff, named above, has filed a lawsuit against you in the Superior Court of New
Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute
this complaint, you or your attorney must file a written answer or motion and proof of service with
the deputy clerk of the Superior Court in the county listed above within 35 days from the date you
received this summons, not counting the date you received it. (The address of each deputy clerk of
the Superior Court is provided.) A $135.00 filing fee payable to the Clerk of the Superior Court
and a completed Case Information Statement (available from the deputy clerk of the Superior
Court) must accompany your answer or motion when it is filed. You must also send a copy of
your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff,
if no attorney is named above. A telephone call will not protect your rights; you must file and
serve a written answer or motion (with fee) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter
a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment
is entered against you, the Sheriff may seize your money, wages or property to pay all or part of
the judgment.

Error! Unknown document property name.

. . .

DATED:   June 28, 2010

/s/ Jennifer M. Perez
Jennifer M. Perez
Acting Clerk of the Superior Court

Name/Address of Defendant to be Served:

Zalmen Landau
1178 59ᵗʰ Street, Apt. 1-F  1425 51st St  Apt. B-7
Brooklyn, NY 11219-4999  3616

2

· Error! Unknown document property name.



JOE O'BRIEN
348 EAST 80TH ST. UNIT 10-L
NY, NY 10075

Personal & Confidential

Salmon Landau
1425 51st St. apt. B-7
Brooklyn, NY 11219-3616

7010 1670 0000 4156 1078

U.S. POSTAGE
PAID
NEW YORK, NY
NOV 10075 10
AMOUNT
$3.24
0001/7530-01



Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7010 1670 0000 4156 1078**
Status: **Delivered**

Your item was delivered at 12:27 pm on November 12, 2010 in
BROOKLYN, NY 11219. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( **Restore Offline Details >** )    ( **Return to USPS.com Home >** )

**Track & Confirm**

Enter Label/Receipt Number.

[                    ]

( **Go >** )

---

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

**Copyright© 2010 USPS. All Rights Reserved.**    No FEAR Act EEO Data    FOIA

1 of 1                                                                                          2/25/2011 1:46 PM

# EXHIBIT G

American General Life Insurance Co.,

                  Plaintiff,

      vs.

Zalmen Landau as trustee of The C Fink Family
Trust,

                  Defendant.

**AFFIDAVIT OF**
**ZALMEN LANDAU**

STATE OF  New York       )
                      ss:
COUNTY OF  Kings       )

I, ZALMEN LANDAU, being duly sworn, deposes and says:

1.      I am the Trustee of the C Fink Family Trust.

2.      I currently reside at 1425 51st Street, Apt. B7, Brooklyn, New York and I have been residing at that address for the past 20 months.

3.      I have never resided at 626 Wythe Place, Apartment 4C in Brooklyn, New York. I have never resided at 1178 59th street in Brooklyn, New York.

4.      Between May 21, 2010 and the present, American General did not serve the insured or me with a copy of the complaint, but instead, demanded additional premiums.

5.      I spoke with American General a number of times in 2009 and 2010. On September 13, 2010, I called American General and was advised that it will send me a verification of coverage. During that call, I was not advised that the policy was being challenged. I was not asked for my home address.

ZALMEN LANDAU

Sworn to before me this
___28___ day of February, 2011

NOTARY PUBLIC

ARON WOLCOWITZ
Notary Public - State of New York
No. 01WO6210908
Qualified in Kings County
My Commission Expires September 8, 2013

2