UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

The C Fink Family Trust by its trustee Zalmen
Landau,

      Plaintiff,

  vs.

American General Life Insurance Co.,

      Defendant.

Case No.: 10-cv-9230 (JSR)

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS

SCHINDEL, FARMAN, LIPSIUS
GARDNER & RABINOVICH LLP
Attorneys for Plaintiff The C Fink Family Trust by
its Trustee Zalmen Landau
14 Penn Plaza, Suite 500
New York, NY  10122
Telephone No.: (212) 563-1710
File No.: 4421.0001

By: David BenHaim, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................ 3

   1.   The New York Lapse Action ........................................................................... 3

   2.   The New Jersey Rescission Action ................................................................. 4

   3.   American General's Continued collection and Retention of Premiums ..................... 6

ARGUMENT ...................................................................................................................... 7

   I.   THIS COURT SHOULD RETAIN JURISDICTION OR, IN THE ALTERNATIVE, REMAND THE PRESENT ACTION TO THE SUPREME COURT OF NEW YORK. ......................................................................................................................... 7

   II.   THIS COURT SHOULD NOT DISMISS THIS ACTION IN FAVOR OF THE NEW JERSEY ACTION WHICH WAS FILED FIRST ............................................ 9

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

Cases

*Abercrombie v. Andrew College,*
438 F.Supp.2d 243 (S.D.N.Y. 2006)........................................................................................... 3

*Adam v. Jacobs,*
950 F.2d 89 (2nd Cir.1991)......................................................................................................... 10

*Airship Industries (UK) Ltd. v. Goodyear Tire & Rubber Co.,*
643 F.Supp. 754 (S.D.N.Y. 1986) ............................................................................................. 11

*Allen v. WestPoint-Pepperell, Inc.,*
945 F.2d 40 (2nd Cir.1991)......................................................................................................... 3

*American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust,*
2010 WL 5253611 (D.N.J. 2010) .......................................................................................... 2, 11

*Ames v. Manhattan Life Ins. Co.,*
40 App. Div. 465, 58 N. Y. S. 244; Id ...................................................................................... 13

*Bible v. John Hancock Mutual Life Ins. Co. of Boston, Mass.,*
256 N.Y. 458, 176 N.E. 838(1930)............................................................................................ 13

*Brillhart v. Excess Insurance Co. of America,*
316 U.S. 491, 62 S. Ct. 1173 ...................................................................................................... 8

*Cf. Jacobs v. District Director of Internal Revenue, Borough of Manhattan, City of New York,*
217 F. Supp. 104, 106 (S.D.N.Y. 1963)..................................................................................... 8

*Continental Ins. Co. v. Helmsley Enterprises, Inc.,*
211 A.D.2d 589, 622 N.Y.S.2d 20............................................................................................. 13

*E.E.O.C. v. Univ. of Pa.,*
850 F.2d 969, 972 (3rd Cir.1988) .............................................................................................. 10

*Englishtown Auction Sales, Inc. v. Mount Vernon Fire Ins. Co.,*
112 N.J.Super. 332, 271 A.2d 292 (N.J.Super.1970) ................................................................ 15

*Factors Etc., Inc. v. Pro Arts, Inc.,*
579 F.2d 215 (2nd Cir.1978)....................................................................................................... 10

*First City Nat'l Bank & Trust Co. v. Simmons,*

878 F.2d 76 (2nd Cir.1989)................................................................................ 10

*Garbin v. Mutual Life Ins. Co. of New York,*
77 Misc.2d 689, 356 N.Y.S.2d 741(N.Y.Sup. 1974) ...................................... 14

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim,*
593 F.Supp.2d 471 (E.D.N.Y 2009) .............................................................. 14

*In re Application of Thomas and Agnes Carvel Foundation,*
36 F. Supp.2d 144 (S.D.N.Y. 1999)................................................................ 8

*Jaffee v. The Society of N.Y. Hosp.,*
1997 WL 685347 (S.D.N.Y. Nov. 4, 1997)...................................................... 9

*Johnson v. Metropolitan Life Ins. Co.,*
79 A.D.3d 450, 913 N.Y.S.2d 44 (1st Dept. 2010)........................................ 11

*Johnson v. Mutual Health Assn.,*
5 A.D.2d 103, 168 N.Y.S.2d 879 (1957) ...................................................... 14

*Kramer v. Phoenix Life Ins. Co.,*
15 N.Y.3d 539, 2010 WL 4628103 (2010) .................................................. 11

*Lampke v. Metropolitan Life Ins. Co.,*
279 N.Y. 157,165, 18 N.E.2d 14(1938)........................................................ 13

*Leonard F. v. Israel Discount Bank of New York,*
199 F.3d 99 (2nd Cir. 1999).......................................................................... 3

*McClelland v. Mutual Life Ins. Co., of New York,*
217 N. Y. 336, 111 N. E. 1062 ...................................................................... 13

*Merchants Indem. Corp. v. Eggleston,*
37 N.J. 114, 179 A.2d 505, (1962)................................................................ 15

*National Union Fire Ins. Co. of Pittsburgh v. Karp,*
108 F.3d 17 (2d Cir. 1997)............................................................................ 9

*Rodriguez,*
232 N.Y.S.2d at 684...................................................................................... 14

*Satz v. Massachusetts Bonding & Insurance Co.,*
243 N. Y. 390, 153 N. E. 844 ........................................................................ 13

*Scalia v. Equitable Life Assur. Soc. of U.S.,*
251 A.D.2d 315, 673 N.Y.S.2d 730 (2nd Dept.1998) .................................. 13

*Security Mutual Life Insurance Co. of New York v. Rodriguez,*
65 A.D.3d 1, 880 N.Y.S.2d 619 (2009) (1st Dept. 2009) .................................................... 14

*Thomas v. Goord,*
215 Fed.Appx. 51, 53, 2007 WL 387588, 1 (2d Cir. 2007) ................................................. 3

*Tyrnauer v. Travelers Ins. Co.,*
15 A.D.2d 293, 223 N.Y.S.2d 151 (App. Div  1961) ..................................................... 13

*Weiner v. Government Emp. Ins. Co. of Washington, D. C.,*
52 A.D.2d 844, 382 N.Y.S.2d 814 (N.Y.A.D. 1976) ......................................................... 14

*Whipple v. Prudential Ins. Co., of America,*
222 N. Y. 39, 118 N. E. 211 ................................................................................................. 13

*Wilton v. Seven Falls Co.,*
515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed.2d 214 (1995) .................................................... 7

*Zeldman v. Mutual Life Ins. Co. of N.Y.,*
269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept. 1945) ................................................................. 13

## Other Authorities

*Ciccone v. Colonial Life Ins. Co. of America,* 110 N.J.L. 276, 164 A. 444, (N.J.Err & App. 1933)
................................................................................................................................................. 15

*Goldstein v. Metropolitan Cas. Ins. Co. of N. Y.,* 10 N.J.Super. 291, 77 A.2d 51 (N.J.Super.L.
1950) *aff'd,*, 14 N.J.Super. 214, 81 A.2d 797 (1951) .................................................... 14

*Kozloski v. Prudential Ins. Co. of Am.,* 95 N.J.L. 101, 113 A. 135 (E. & A. 1921) ...................... 14

Plaintiffs The C Fink Family Trust  and Zalmen Landau as trustee of Fink Trust (collectively, the "Fink Trust"), respectfully submit the within memorandum of law in opposition to the motion of defendant American General Life Insurance Company ("American General") to dismiss the above-captioned action.

## PRELIMINARY STATEMENT

The Fink trust filed this declaratory judgment action in the Supreme Court for the State of New York, New York County, seeking a declaration that a policy issued by American General to the Fink Trust did not lapse for failure to pay premiums. The facts in this matter, as outlined in the complaint, are straight-forward: plaintiff made all premium payments and therefore, American General's notice that the policy lapsed for failed to pay premium should be declared a nullity.

At some point prior to the filing of this action, American General filed an action in a New Jersey state court against many defendants, most of whom are not parties to this action, alleging that the policy application contained misrepresentations and seeking to rescind the policy. The only person served, to date, in the New Jersey action is American General's own agent. American General never served the insured, the trustee or the Trust. A motion to dismiss the New Jersey action for lack of service is pending.

Moreover, despite filing the New Jersey rescission action on May 21, 2010, American General collected over $350,000 in premiums from the time it became aware of the allegations in the New Jersey action and the present and has not once offered to return those premiums. As will be discussed in detail below, the decision by American General to file the lawsuit and not serve it upon the insured or the Trust was part of a calculated scheme to collect premiums from the Trust without any intention to provide coverage or return the premiums. Elsewhere, American General

has been accused of issuing high value elderly policies, such as the Fink policy, purely in order to keep the premiums with no intention of ever paying out a death benefit. *American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, 2010 WL 5253611 (D.N.J. 2010). Here, American General filed the New Jersey action, did not serve it upon anyone other than its own agent, and continued to charge and collect premiums, which, incredulously, American General claims it is entitled to keep. As will be discussed below, the continued demand and retention of premiums is yet another ground to dismiss the New Jersey rescission action, even if the New Jersey court allows a late service of that action.

In the interim, American General removed the New York State Court lapse action to Federal Court, frustrating the Trust's wish to have this matter litigated in State Court. Incredulously, American General now claims that the Federal Court should abstain from deciding a state law issue. Does American General believe this case belongs in State Court or Federal Court? It is respectfully submitted that even if this court exercises its discretion to refuse jurisdiction, it should remand the action back to the state court from which it came: the Supreme Court of the State of New York, New York County.

Additionally, while the first to file rule is generally applied by courts in this Circuit, this action should not be stayed or dismissed because (1) the New Jersey rescission action and the New York lapse action are not substantially similar; (2) the parties in the actions are not the same and (3) special circumstances exist; i.e., the calculated decision by American General to not even make an attempt to serve anyone for months after filing the New Jersey rescission action.

As set out in greater detail below, dismissal would be improper even if the Court elected to exercise its discretion to refrain from asserting jurisdiction over the present matter. Accordingly, the Fink Trust urges this Court to deny defendant's motion in its entirety.

2

## FACTS

American General's notice of motion states that this motion is being brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; lack of subject matter jurisdiction. The Memorandum of Law, however, does not argue that the court lacks subject matter jurisdiction as American General concedes that the parties are completely diverse and the amount in controversy exceeds $75,000. Instead, in the conclusion section, page 18, American General requests dismissal under Rule 12(b)(6); failure to state a claim upon which relief can be granted. The "facts" of a motion to dismiss under Rule 12(b)(6), however, must come only from the complaint as for the purposes of a motion under Rule 12(b)(6) all the facts in the complaint are assumed to be true and additional facts are not permitted. In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir. 1999) (*quoting Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)); *Thomas v. Goord,* 215 Fed.Appx. 51, 53, 2007 WL 387588, 1 (2d Cir. 2007) (same); *Abercrombie v. Andrew College,* 438 F.Supp.2d 243, 261 (S.D.N.Y. 2006) (same).

Thus, all of the "facts" contained in American General's Memorandum of Law, not based on the complaint or documents referenced in the complaint, as well as the Declaration of Andrew P. Fishkin in its entirety should be stricken.

### 1. **The New York Lapse Action**

The Fink Trust is the owner of American General Life Insurance policy number U10061721L, insuring the life of Chaim Fink, which was issued on or about May 22, 2008,

(hereinafter the "Policy").  American General, by letter dated April 22, 2010, notified the Fink Trust that the Policy was entering the grace period and that, if premium payments in the amount of $100,166.66 were not made on or before June 22, 2010, the Policy would lapse for failure to pay premiums.  On June 15, 2010, the Fink Trust paid $100,200 in premium payments.

On July 14, 2010, American General notified Landau that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before September 13, 2010 then the Policy would lapse for failure to pay premiums.   On September 1, 2010, the Trust paid an additional $100,500 in premium payments.  American General, however, did not wait to see whether the premium was paid.  Instead, American General kept both the June and the September premium payments and, incredulously, by letter dated July 15, 2010, declared the policy lapsed for non-payment of premium.[1]

The Trust commenced this action in state court, requesting a declaration that the policy is not lapsed for failure to pay premiums.

**2.  The New Jersey Rescission Action**

American General commenced an action against the Fink Trust in the Superior Court of New Jersey, Ocean County, docket number L1954-10 (the "New Jersey action"), on May 21, 2010, seeking to void the Policy *ab initio* for alleged material misrepresentations in the application.  In that action, American General sued its agent, Israel Biller, the insured, Chaim Fink and the trustee, Zalmen Landau, who is Chaim Fink's grandson. In the complaint, American General claims that it is entitled to keep all the premiums paid on the policy even should the policy be rescinded. The New Jersey state court issued the Track Assignment Notice the same day, May 21, 2010.

---

[1]  Indeed, American General continued accepting premiums through December 2010 and maintains that it is entitled to keep all of it.

Despite the fact that New Jersey Court Rule 4:4-1 requires the summons to be issued within 15 days from the date of the Track Assignment Notice, American General did not issue the summons until June 28, 2010. Rule 4:4-1 provides, "the plaintiff, the plaintiff's attorney or the clerk of the court may issue the summons. If a summons is not issued within 15 days from the date of the Track Assignment Notice, the action may be dismissed."

On June 15, 2010, after this action was filed, the Trust paid $100,200 in premium payments. The payment was made pursuant to an April 22, 2010, notice by American General to the Trust that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before June 22, 2010 then the Policy would lapse for failure to pay premiums.

On July 6, 2010, American General served its agent, Israel Biller. On July 14, 2010, American General notified Landau that the Policy was entering the grace period and that if premium payments in the amount of $100,166.66 were not made on or before September 13, 2010 then the Policy would lapse for failure to pay premiums. On September 1, 2010, the Trust paid an additional $100,500 in premium payments.

Seven days after receiving an additional $100,500, on September 8, 2010, American General it made its first feigned attempt at serving Chaim Fink, the insured. On September 8, 2010, American General performed its "service" on Chaim Fink by mailing a copy of the summons but not the complaint at 626 Wythe Place, Apartment 4L. On October 25, 2010, American General mailed a copy of the summons and not the complaint to Chaim Fink at 626 Wythe Place, Apartment 4L. Exhibit F of Fishkin Declaration.

Chaim Fink never resided in Apartment 4C and although he did live in Apartment 4L at the time of the application, he left the country prior to the commencement of this action and has

never returned. Thus, his principal dwelling place is not in the United States. Chaim Fink was never served.

Zalmen Landau and the Trust were also never served in the New Jersey rescission action. Landau resides at 1425 51st Street in Brooklyn, New York and has been doing so for the past two years. He never resided at 1178 59th Street in Brooklyn. The Trust maintained a mailing address at 626 Wythe Place, since March 2010, a fact acknowledged by American General at that time. American General spoke to Mr. Landau by phone in November 2009, March 2010 and September 2010. At no time did American General inform Mr. Landau that the policy was being contested or even ask him for his residence address. In fact, on September 13, 2010, Zalmen Landau spoke with American General and sought a verification of coverage. American General verified that the policy was in effect and promised to send him a verification of coverage. After verifying coverage, on November 4, 2010, Landau submitted an additional $10,000 in policy premiums. On November 12, 2010, Mr. Landau received, for the first time, a copy of the summons but not the complaint, which was mailed to his home at 1425 51st Street in Brooklyn, New York.

Despite having his home address, American General never even attempted to serve him, in person or by mail, at his home. Moreover, American General never even attempted to serve Landau at 626 Wythe Place, the address American General had on file for the Trust until December 20, 2010. Instead, American General, three months after filing the complaint, apparently attempted service upon some Solomon Landau who also lives in Brooklyn, New York. The trustee's name is Zalmen Landau not Solomon Landau. Zalmen Landau was never served.

3. **American General's Continued collection and Retention of Premiums**

From the time American General decided to rescind the policy until they mailed Zalmen Landau a copy of the summons, American General collected and kept the following premium payments:

March 24, 2010 - $100,000

June 15, 2010 - $100,200

September 1, 2010 - $100,500

November 4, 2010 - $10,000

December 1, 2010 - $100,000

American General deposited each of these payments and kept them. Despite the fact that American General was aware that Landau was represented by counsel as early as November 2010, American General never even offered to return the premiums through counsel.

## ARGUMENT

### I.   THIS COURT SHOULD RETAIN JURISDICTION OR, IN THE ALTERNATIVE, REMAND THE PRESENT ACTION TO THE SUPREME COURT OF NEW YORK.

The Fink Trust commenced the present action in the Supreme Court of New York, New York County, Index number 114460/10, on November 4, 2010, seeking a declaration that the policy had been lapsed improperly and remained in full force and effect.   On or about December 3, 2010, American General moved to remove that action to this Court.   Having removed the action, American General has brought the present, bootstrap motion urging the Court to exercise its discretion, as delineated in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L.

Ed.2d 214 (1995), and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620, to dismiss the action entirely.

*Wilton* and *Brillhart* established that a district court has the discretion to abstain from hearing a case brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). It cannot be emphasized too strongly that the Fink Trust <u>never</u> sought the declaratory judgment jurisdiction of this Court over this matter. In both *Wilton* and *Brillhart* the insurer brought a declaratory judgment action in federal court, and the <u>claimant</u> urged abstention so that issues of coverage could be determined in an existing state court action. Here, by contrast, American General – having attempted to lapse the policy for non-payment of premiums before any outstanding premiums were due – has itself removed the New York action to this Court, only to then argue under *Wilton* and *Brillhart* that this Court should abstain from exercising the jurisdiction invoked by American General.

The Fink Trust is content that the issues raised in the New York action be determined by this Court. Having removed the action on grounds of diversity jurisdiction, American General should not now be permitted to use that removal as a pretext for this Court to dismiss the New York action. If this Court chooses to abstain from exercising jurisdiction over this matter, however, the Fink Trust submits that the appropriate procedure would be to remand the action to the Supreme Court of New York. *Cf. Jacobs v. District Director of Internal Revenue, Borough of Manhattan, City of New York*, 217 F. Supp. 104, 106 (S.D.N.Y. 1963) ("While dismissal of the complaint is the usual procedure where a court lacks jurisdiction over the subject matter, the better course in a removed action is to remand the suit to the state court from which it was removed."); *see also In re Application of Thomas and Agnes Carvel Foundation*, 36 F. Supp.2d 144 (S.D.N.Y. 1999) (in which this Court, citing *Wilton*, abstained from exercising jurisdiction

over declaratory judgment claims and remanded those claims to the New York Surrogate's Court).

## II.   THIS COURT SHOULD NOT DISMISS THIS ACTION IN FAVOR OF THE NEW JERSEY ACTION WHICH WAS FILED FIRST

The first to file rule is only applied where the two actions have both (1) the same parties; and (2) identical or substantially similar clams. *Jaffee v. The Society of N.Y. Hosp.*, 1997 WL 685347 (S.D.N.Y. Nov. 4, 1997), *citing National Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17 (2d Cir. 1997). Here, neither element exists.

The parties in the New Jersey action include Israel Biller and Chaim Fink, both of whom are not parties to this action. American General's insurance agent, Israel Biller is not a party in the present action before the Court nor does he have any connection to the issue before this court: whether the policy lapsed for failure to pay premiums. The insured, Chaim Fink, also, has no connection to the only issue before this court: whether the policy premiums were paid in a timely fashion.

In addition, while the two actions both involve the same insurance policy, the claims made and the relief sought, differ. The issue in the New Jersey action is whether the Policy may be voided by American General *ab initio* on the grounds of material misrepresentation in the application. The issue in the present action is whether American General improperly terminated the Policy on the grounds of non-payment of premiums – an issue which could not have been raised in the New Jersey action, which was filed on May 21, 2010, since the letter terminating the Policy was dated July 15, 2010.

This court can rule that the lapse notice is invalid and the policy did not lapse for failure to pay premium and the court in New Jersey can still decide whether the policy can be rescinded for material misrepresentations in the policy application.

The discovery in each matter differs from the other. In the New Jersey rescission action, discovery will focus on the representations made in the application; whether those representations were true and whether American General materially relied on those representations when issuing the policy. In contrast, in this action, the discovery, like the claims themselves, will be much simpler: when did the premium payments become due and when were they paid.

Moreover, even had the parties and the issues been the same, courts in this Circuit have allowed a later filed suit to proceed where there are special circumstances which justify giving priority to the second-filed suit or where there is a showing of a balance of circumstances favoring the second-filed suit. See, e.g., *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989); *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3rd Cir.1988) ("inequitable conduct, bad faith, or forum shopping" justify departure from the first to file rule); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978).

Here, American General's conduct has been inequitable and its bad faith extensive. American General admits that it was aware of the allegations in the New Jersey rescission action prior to its commencement. (American General Brief, page 4; Fishkin Decl., Exh. I). Despite having knowledge of the grounds for rescission, American General continued to treat the policy as if it were in full force and effect, demanding and collecting over $350,000 in premiums. It only filed the suit days before the statute of limitations/contestability period expired even though it had knowledge of the allegations in the New Jersey action months prior. Although American General filed the lawsuit in May 2010, it did not issue the summons until June of 2010 and then, after having the summons issued, inexcusably failed to serve it on anyone but its own agent. All

of this was done intentionally by American General in order to collect premiums upon a policy it never intended to honor. See, *American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, 2010 WL 5253611 (D.N.J. 2010).

Like in the *Ellman* action, here, American General was aware of the allegations in its complaint from the time it issued the policy but kept the policy in force solely to collect premiums and then rescind the policy and keep all the premiums paid as an "offset" to its damages.

Moreover, American General's decission to file suit in New Jersey was motivated solely by its decision to shop for a more favorable forum. American General is a Texas corporation and all of the defendants in the New Jersey rescission action, except its agent Biller, are New York residents. All of the discovery in the New Jersey rescission action will take place in Texas and New York. American General is unable to serve anyone other than Biller in New Jersey. It does not appear that New Jersey has any connection to the policy other than the fact that American General's agent may have had an office there.  Clearly, American General is seeking to avoid the pro-consumer public policies of New York. See, e.g., *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539, --- N.E.2d ----, 2010 WL 4628103 (2010) (investment insurance policies procured for sale on a secondary market are legal under New York law); *Johnson v. Metropolitan Life Ins. Co.*, 79 A.D.3d 450, 913 N.Y.S.2d 44, 2010 WL 4941507 (1st Dept. 2010) (identifying features in New York law which are more consumer-friendly than New Jersey law). The first-to-file rule should therefore not apply in the face of blatant forum shopping by American General.

Finally, courts in this Circuit have refused to apply the first-to-file rule where it is evident that the first filed action will not decide the issues before this court. *Airship Industries (UK) Ltd. v. Goodyear Tire & Rubber Co.*, 643 F.Supp. 754, 760 (S.D.N.Y. 1986) ("jurisdiction should not

be declined merely because another suit is pending, if the controversy between the parties will not necessarily be decided in the pending suit."). Here, the New Jersey rescission action will never address the issues here because (1) the New Jersey action will be dismissed for failure to serve and (2) the continued demand and collection of premiums estops American General from pursuing a rescission action.

On February 2, 2011, defendants moved in the New Jersey rescission action to dismiss that action for failure to properly serve. The motion, which is attached to accompanying affidavit of David BenHaim, provides that Chaim Fink, the insured, lives abroad and can only be served through the Hague Convention. At one point, prior to the commencement of the New Jersey rescission action, Mr. Fink resided at 626 Wythe Place, Apartment 4L. He never lived in apartment 4C. Even had Mr. Fink lived at 626 Wythe Place, Apartment 4L, at the time of the "service" American General never served the complaint, only the summons, at that address,

The Trustee was also never served. Mr. Landau lives on 51st Street in Brooklyn. He was also purportedly served by "nail and mail" at 626 Wythe Place, Apartment 4C, a location in which he never resided. Although in November 2010, he was mailed a copy of the summons at his 51st Street address, the complaint was never mailed to Mr. Landau. Mailing the summons but not the complaint does not constitute service. See, New Jersey Rule 4:4-3 ("Summonses shall be served together with a copy of the complaint) and Rule 4:4-4(b)(C) ("mailing a copy of the summons and complaint..."). By its own admission, American General never served a copy of the summons and complaint upon Fink, Landau or their residences.

Moreover, even if American General survives the motion to dismiss for lack of personal jurisdiction, or is given additional time to serve the defendants, the New Jersey rescission action is barred under the theories of waiver and estoppel.

An "attempt to both accept premiums and reserve its right to rescind is unenforceable for lack of mutuality and timeliness." *Continental Ins. Co. v. Helmsley Enterprises, Inc.*, 211 A.D.2d 589, 622 N.Y.S.2d 20 (1st Dept. 1995). As the *Helmsley* court noted , "[w]here an insurer accepts premiums after learning of an event allowing for cancellation of the policy, the insurer has waived the right to cancel or rescind."

It is an old and accepted principle that if an insurer accepts premium after learning of an event which the insurer believes entitles it to rescind or cancel the policy it has waived that right. *Whipple v. Prudential Ins. Co., of America*, 222 N. Y. 39, 118 N. E. 211; *Satz v. Massachusetts Bonding & Insurance Co.*, 243 N. Y. 390, 153 N. E. 844; *McClelland v. Mutual Life Ins. Co., of New York*, 217 N. Y. 336, 111 N. E. 1062; *Ames v. Manhattan Life Ins. Co.*, 40 App. Div. 465, 58 N. Y. S. 244; *Id.*, 167 N. Y. 584, 60 N. E. 1106; *Bible v. John Hancock Mutual Life Ins. Co. of Boston, Mass.*, 256 N.Y. 458, 176 N.E. 838(1930); *Zeldman v. Mutual Life Ins. Co. of N.Y.*, 269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept. 1945). "To permit an insurance company to accept the payment of premiums on a policy which it knew when issued was void from its inception would constitute a fraud on the policyholder." *Lampke v. Metropolitan Life Ins. Co.*, 279 N.Y. 157,165, 18 N.E.2d 14(1938); *Tyrnauer v. Travelers Ins. Co.*, 15 A.D.2d 293, 300, 223 N.Y.S.2d 151, 158 (App. Div 1961); *Scalia v. Equitable Life Assur. Soc. of U.S.*, 251 A.D.2d 315, 673 N.Y.S.2d 730, 731( 2 Dept.1998) (" [Insurer] waived its right to rescind the disability income insurance policy, by continuing to accept premium payments after it gained sufficient knowledge of the alleged misrepresentations upon which it claims to have relied when issuing the policy. It is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind"). *Continental Ins. Co. v. Helmsley Enterprises, Inc.*, 211 A.D.2d 589, 622

N.Y.S.2d 20 (1st Dept.1995) ("Plaintiff's claimed attempt to both accept premiums and reserve its right to rescind is unenforceable for lack of mutuality and timeliness.  Where an insurer accepts premiums after learning of an event allowing for cancellation of the policy, the insurer has waived the right to cancel or rescind" (citations omitted); *Weiner v. Government Emp. Ins. Co. of Washington, D. C.*, 52 A.D.2d 844, 382 N.Y.S.2d 814 (N.Y.A.D. 1976); *Garbin v. Mutual Life Ins. Co. of New York*, 77 Misc.2d 689, 356 N.Y.S.2d 741(N.Y.Sup. 1974); *Johnson v. Mutual Health Assn.*, 5 A.D.2d 103, 168 N.Y.S.2d 879 (1957) *mod'f. on other grounds,* 5 N.Y.2d 1031, 185 N.Y.S.2d 552, 158 N.E.2d 251.(1958).

In *Security Mutual Life Insurance Co. of New York v. Rodriguez,* 65 A.D.3d 1, 880 N.Y.S.2d 619 (2009) (1st Dept. 2009), the insurer claimed that it "inadvertently" collected the premium payments because "the payments were debited monthly from Mobarak's ... account" automatically. *Rodriguez*, 232 N.Y.S.2d at 684. The court, however, identified the argument as:

> Contrary to the case law. . .Plaintiff's acceptance of premiums from Mobarak after learning of the alleged fraud allowing for cancellation of the policies constituted a waiver of (or more properly an estoppel against) its right to cancel or rescind the policies." Id. at 625.

The law "is crystal clear on this point-when an insurer seeks to rescind a contract ab initio based on misrepresentations by the insured, it must promptly disaffirm the contract upon learning of the misrepresentations – and certainly it may not continue to derive benefit under it." *GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F.Supp.2d 471 (E.D.N.Y 2009) (denying insurer right to rescind because it accepted premium payments)

This maxim of insurance law is applied under New Jersey law. *Kozloski v. Prudential Ins. Co. of Am.*, 95 N.J.L. 101, 113 A. 135 (E. & A. 1921); *Goldstein v. Metropolitan Cas. Ins. Co. of N. Y.*, 10 N.J.Super. 291, 77 A.2d 51 (N.J.Super.L. 1950) *aff'd,*, 14 N.J.Super. 214, 81 A.2d 797 (1951).

In *Goldstein,* once the court found that the insurer was aware of the false item, it held, as a matter of law, there is "a waiver if the insurer accepts premium with knowledge of the breach of warranty or condition." 10 N.J. Super at 294.

In *Kozloski* the insurer received and retained a late payment after the insured had died. The court found the insurer "could not declare the policy to be void and at the same time retain moneys paid to it on account of the insured . . . except upon the theory that the policy is in full force and virtue." 95 N.J.L. at 104. In *Ciccone v. Colonial Life Ins. Co. of America,* 110 N.J.L. 276, 164 A. 444, (N.J.Err & App. 1933) the insurer accepted premium, despite its claim that the policy was void. The court, citing *Kozloski,* held that "acceptance of the premium, defendant waived the forfeiture [and] [t]he policy was thereby revived, and continued to be a valid and outstanding obligation against the insurer." 110 N.J.L. at 279. Here as well, AIG cannot retain premium, threaten cancellation if premium is not paid and, at the same time, maintain the policy is void *ab-initio*.

In *Merchants Indem. Corp. v. Eggleston,* 37 N.J. 114, 179 A.2d 505, (1962) New Jersey's highest court set forth a long accepted rule:

> [T]he defrauded party must thus elect which course he wishes to follow. He cannot pursue both. If he elects to continue with the contract, the election is final and the contract is affirmed, not because he wants it to be, but because the law makes it so. And if by his conduct he affirms the contract, he cannot be heard to say that he did not 'voluntarily' or 'intentionally' relinquish his right to call of the deal.

37 N.J. at 131,132.

In *Englishtown Auction Sales, Inc. v. Mount Vernon Fire Ins. Co.,* 112 N.J.Super. 332, 337, 271 A.2d 292 (App.Div.1970) the court addressed the issue of retaining of premium and held that the retention of premium "constitutes a waiver as a matter of law."

Here, by American General's admission, it investigated the Fink policy "prior to the commencement" of the New Jersey rescission action. In the Affidavit of Diligent Inquiry by Karen Peck, American General concedes that it was investigating the policy as early as March 2010 (Fishkin Decl. Exhibit G). The following payments were accepted and retained by American General since March 2010:

March 24, 2010 - $100,000

June 15, 2010 - $100,200

September 1, 2010 - $100,500

November 4, 2010 - $10,000

December 1, 2010 - $100,000

American General claims that on August 17, 2010, it offered one premium payment to Solomon Landau, who American General thought was Zalmen Landau. American General, however, was aware as early as November 2010 that this firm represented Zalmen Landau and, yet it never offered to return the premiums to the actual Zalmen Landau. In fact, American General now claims it is entitled to keep all the premiums it collected as an "offset" to its damages. It has still not offered Zalmen Landau a return of the wrongly collected premium.

Not only did American General charge and collect premium, but on September 13, 2010, in a phone conversation with Mr. Landau, American General verified that coverage was still in effect, inducing Mr. Landau to send additional premium. American General spoke with Mr. Landau numerous times since the commencement of the New Jersey rescission action and never advised him to stop sending premiums or that the policy was being challenged. Accordingly, the New Jersey rescission action is barred under the theories of waiver and estoppel.

Since the New Jersey action will be dismissed it is respectfully submitted that this action be allowed to proceed either before this court or in the Supreme Court for the State of New York.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that defendant's motion be denied in its entirety.

Dated:  February 28, 2011
      New York, New York

SCHINDEL, FARMAN, LIPSIUS
GARDNER & RABINOVICH LLP
Attorneys for Plaintiffs The C Fink Family Trust
and Trustee Zalmen Landau

BY:_____
       David BenHaim
14 Penn Plaza, Suite 500
New York, NY  10122
Telephone No.: (212) 563-1710
File No.: 4421.0001

17

AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
          ) ss.:
COUNTY OF NEW YORK  )

I, Tandrea Lane, being duly sworn, states as follows:  I am over 18 years of age, not a party to the within action, and employed at 14 Penn Plaza, Suite 500, New York, New York 10122.  On **February 28, 2011**, I served the within **Memorandum of Law in Opposition to Defendant's Motion to Dismiss** upon the persons or parties designated below by mailing a true and complete copy of same in a postage pre-paid envelope, and depositing same in a post office or official depository of the United States Postal Service within New York State, at the last known address of the addressees as set forth herein:

**Andrew P. Fishkind**
**Steven M. Lucks**
**EDWARDS ENGELL PALMER & DODGE LLP**
**750 Lexington Avenue**
**New York, NY  10022**
**Attorneys for Defendant**

             Tandrea Lane

Sworn to before me this
28th day of February, 2011

Notary Public

EDWARD FARMAN
Notary Public, State of New York
No. 02FA4789055
Qualified in Nassau County
Commission Expires Oct. 31, 2013